In re **CARDONE REALTY CORP.**, Appellant,

v.

**TEAMSTERS PENSION FUND OF PHILADELPHIA AND VICINITY and New England Teamsters & Trucking Industry Pension Fund, Appellees.**

No. CIV–88–460C.

United States District Court, W.D. New York.

May 3, 1989.

Klinger, Nicolette, Mavroudis & Honig, Oradell, N.J. and Goldstein, Navagh, Bulan & Chiari, Buffalo, N.Y. (Richard B. Honig, Oradell, N.J. and Harold P. Bulan, Buffalo, N.Y., of counsel), for appellant.

DeMaria, Ellis & Hunt, Newark, N.J. and Rocco De Perno, Utica, N.Y. (Paul A. Friedman, Newark, N.J. and Elizabeth Gibbons, Utica, N.Y., H. David Kelly, Jr., Grady & Dwyer, Boston, Mass., of counsel), for appellees.

## BACKGROUND

CURTIN, District Judge.

Appellant Cardone Realty Corporation ("Cardone") has brought this appeal pursuant to 28 U.S.C. § 158(a). Cardone is claiming that Judge Beryl McGuire of the United States Bankruptcy Court for the Western District of New York improperly issued a protective order precluding it from discovering documents relating to the amount of withdrawal liability that it allegedly owes to the Teamsters Pension Trust Fund of Philadelphia and Vicinity and the New England Teamsters and Trucking Industry Pension Fund ("Pension Funds").

## FACTS

Prior to July 10, 1985, Oneida Motor Freight, Inc. ("Oneida"), maintained collective bargaining agreements with local unions associated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Pursuant to these agreements, Oneida was obligated to remit contributions to several multi-employer pension funds, including the appellee Pension Funds, on behalf of its employees who were participants in those funds. On July 10, 1985, Oneida filed a voluntary bankruptcy petition in the District of New Jersey and ceased contributing to the funds. It is uncontested that after Oneida filed its petition for bankruptcy, the Pension Funds notified Cardone that, as a member of Oneida's control group, it was obligated to pay withdrawal liability under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 et seq. It is also uncontested that Cardone subsequently failed to initiate arbitration or request information within the time limits set forth in the MPPAA.

On January 12, 1987, the Pension Funds filed an involuntary petition for relief against Cardone pursuant to Chapter 7 of the Bankruptcy Code for failure to pay its alleged withdrawal liability. Cardone then served requests for documents pertaining to the amounts of the Pension Funds' claims. The Pension Funds subsequently

moved for a protective order pursuant to FED.R.CIV.P. 26(c) covering some of the requested documents [1] on the ground that Cardone had waived its right to dispute the amounts of the Pension Funds' claims by failing to request review and arbitration as required by the MPPAA.

On December 3, 1987, Judge McGuire granted the Pension Funds' motion for a protective order, stating

I'm satisfied from the cases which arose in nonbankruptcy contexts, that it's perfectly appropriate in the context of an involuntary petition, to bind the debtor with the effects of a procedural default, which concededly occurred in this case, and that was namely this debtor's failure to seek arbitration on the issue of the amount of its alleged liability.

Item 1 at 63. *See id.* at 52–53.

The question presently before the court is whether the bankruptcy court abused its discretion by entering the protective order.

## DISCUSSION

 Cardone contends that the bankruptcy court abused its discretion by granting the Pension Funds' motion for a protective order, arguing that because the bankruptcy court is the final arbiter of claims against the debtor, the documents pertaining to the amount and calculation of the withdrawal liability should be considered relevant in the bankruptcy proceedings. Item 3 at 5–11. Cardone also contends that it should not have been considered in procedural default pursuant to the MPPAA, claiming that the time frame within which it was required to initiate arbitration under the MPPAA had been tolled by the filing of the bankruptcy petition by Oneida. Therefore, Cardone alleges, it should be entitled to the protection of the automatic stay that went into effect as to Oneida under the Bankruptcy Code, 11 U.S.C. § 362(a). Item 3 at 11–14.

The Pension Funds contend that Cardone has failed to perfect its appeal and that, therefore, this court lacks subject matter jurisdiction. Item 4 at 12–16. Regarding the merits of Cardone's appeal, the Pension Funds contend that the bankruptcy court did not abuse its discretion by granting the motion for a protective order, Item 4 at 17, and that the time within which Cardone was required to initiate arbitration under the MPPAA was not tolled by the filing of Oneida's bankruptcy petition. Item 4 at 25–30.

28 U.S.C. § 158(c) provides that an appeal under 28 U.S.C. § 158(a) is to "be taken in the same manner as appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules." Bankruptcy Rule 8001(b) allows appeals from interlocutory judgments to be taken by filing a notice of appeal accompanied by a motion for leave to appeal prepared in accordance with Bankruptcy Rule 8003.

However, Rule 8003(c) of the Bankruptcy Code also provides that if a notice of appeal from an interlocutory order is filed but a motion for leave to appeal is not filed, the district court has three courses of action. The court can either grant leave to appeal on the basis of the papers that have been filed, direct the appellant to file a motion for leave to appeal, or deny leave to appeal after treating the notice of appeal as a motion for leave to appeal. Since there does not appear to be any compelling reason to do otherwise, the court will grant leave to appeal and decide the merits of Cardone's appeal.

Pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), all companies under common control are treated as a single employer for the purpose of determining withdrawal liability. 29 U.S.C. §§ 1301(b)(1), 1381. The MPPAA provides in relevant part:

3. All actuarial computations showing the method by which the Fund computes the liability alleged in the Petition, together with all supporting documentation the Fund will rely upon in support of the computation of said liability.

Item 1 at 57. *See* Item 4 at 2–3.

---

1. Specifically, the Pension Funds objected to the following requests:

 2. All ledger sheets or summaries showing contributions made by Oneida Motor Freight, Inc. from January 1, 1983 to date in connection with the foregoing Collective Bargaining Agreement.

Any dispute between an employer and the [pension] plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration....

....

If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

29 U.S.C. §§ 1401(a)(1), (b)(1).

It is undisputed that Cardone had the opportunity to invoke the review and arbitration procedures of the MPPAA but chose not to do so. Cardone claims, nonetheless, that Judge McGuire should not have issued the protective order because the requested documents are relevant to the proceeding pending in bankruptcy court insofar as they "are essential to its ability to show [the existence of] a bona fide dispute as to the amount of the [Pension Funds'] claims and thus to defend and dismiss [their] petition." Item 3 at 8. *See* 11 U.S.C. § 303(b)(1).

Cardone contends that it is not in default under the MPPAA because the automatic stay provision went into effect when Oneida filed its voluntary petition under Chapter 11 of the Bankruptcy Code. *See* 11 U.S.C. § 362(a). Cardone asserts that if it and Oneida are alleged to constitute one employer for the purpose of withdrawal liability, then they should also be considered a single employer for all other purposes of Subchapter III of ERISA. Consequently, Cardone argues, it should be entitled to the automatic stay that applies to Oneida. Cardone is thus trying to receive the protection of the stay that took effect on July 10, 1985, although Cardone remained out of bankruptcy for approximately 18 months after the filing of Oneida's petition.

The bankruptcy court found Cardone to be in default under the MPPAA, and that,

accordingly, Cardone could not dispute the amounts of the Pension Funds' withdrawal liability claims. As noted above, the bankruptcy court found it to be "perfectly appropriate in the context of an involuntary petition, to bind the debtor with the effects of a procedural default, which concededly occurred in this case, and that was namely this debtor's failure to seek arbitration on the issue of the amount of its alleged liability."

In *IUE AFL–CIO Pension Fund v. Barker & Williamson*, 788 F.2d 118 (3rd Cir.1986), the Third Circuit held that by failing to request review and arbitration pursuant to the MPPAA, a corporation had waived its statutory right to challenge the amount of its alleged withdrawal liability to the IUE AFL–CIO Pension Fund. The court noted that when faced with possible liability as a member of a control group as defined by ERISA, a corporation has at least three courses of action available: first, the corporation can admit its status as a member of the control group, request review and arbitration of its alleged withdrawal liability, and make the required payments; second, the corporation can seek to compel the withdrawing employer to request review and arbitration itself and to make the required interim payments; third, the corporation can seek a declaratory judgment to have its potential status as a member of the control group resolved in federal court. 788 F.2d at 129.

Instead, the defendant corporation in *Barker & Williamson*, like Cardone, chose to do nothing, thereby gambling that it would not later be found to be a member of the control group. The Third Circuit held that by doing so, however, the corporation risked losing the possibility of review and arbitration by being found in default. *Id.* *See also New York State Teamsters Conference Pension & Retirement Fund v. McNicholas Transportation Company*, 658 F.Supp. 1469 (N.D.N.Y.1987), *aff'd*, 848 F.2d 20 (2d Cir.1988).

The present record presents no evidence suggesting that the Judge McGuire, whose decision is fully supported by *IUE AFL–CIO Pension Fund v. Barker & William-*

*son,* abused his discretion by granting the Pension Funds' motion for a protective order. Cardone waived the right to obtain the information sought through the procedures provided by the MPPAA, and then later tried to obtain the evidence through discovery. The bankruptcy court refused to allow Cardone to take this action by issuing the protective order. "[This] result, though seemingly harsh, is but a self-inflicted wound." 788 F.2d at 129.

In short, the bankruptcy court did not abuse its discretion by not allowing Cardone the benefit of the automatic stay provisions of 11 U.S.C. § 362, and its decision is hereby affirmed.

So ordered.