In re CARDON REALTY
CORP., Debtor.

CARDON REALTY CORP., Appellant,

v.

TEAMSTERS PENSION TRUST FUND
OF PHILADELPHIA AND VICINITY
and New England Teamsters and
Trucking Industry Pension Fund, Appellees.

Nos. CIV–90–564C, BK–87–10054M.

United States District Court,
W.D. New York.

March 13, 1991.

Brach, Eichler, Rosenberg, Silver, Berstein, Hammer & Gladstone (Allan H. Klinger, of counsel), Roseland, N.J., and Goldstein, Navagh, Bulan & Chiari (Salvatore Sanfilippo, of counsel), Buffalo, N.Y., for debtor.

DeMaria, Ellis, Hunt & Salsberg (Paul A. Friedman, of counsel), Newark, N.J., and The DePerno Firm, P.C. (T.S. Andreasen, of counsel), Utica, N.Y., for appellees.

CURTIN, District Judge.

This is an appeal from a judgment entered in the Bankruptcy Court. Honorable Beryl E. McGuire, United States Bankruptcy Judge, granted appellees' motion for summary judgment and denied appellant's motion for summary judgment by oral decision after argument. After considering proposed findings of fact, Judge McGuire issued supplementary findings of fact and conclusions of law and entered judgment in favor of the appellees. The judgment was entered on March 23, 1990.

On March 28, 1990, the judgment was amended to reflect that the appellee, New England Teamsters and Trucking Industry Pension Fund, was also awarded summary judgment against the appellant. On March 30, 1990, the appellant filed a notice of appeal in this court and also filed a motion to stay the effect of the judgment entered by the Bankruptcy Court. After consider-

ing argument, the motion for a stay was denied.

Pursuant to 28 U.S.C. § 1334(a) and Bankruptcy Rule 8001, 11 U.S.C. Rule 8001, jurisdiction is properly in this court to consider the appeal.

## FACTS

This case was instituted on January 12, 1987, by the Teamsters Pension Trust Fund of Philadelphia and Vicinity ("Philadelphia Fund") and the New England Teamsters and Trucking Industry Pension Fund ("New England Fund"). An involuntary petition for relief was filed against Cardon Realty Corporation ("Cardon" or "appellant") under Chapter 7 of the Bankruptcy Code for failure to pay withdrawal liability claimed to be owed by Cardon pursuant to the Multi–Employer Pension Plan Amendments Act of 1980 ("MPPAA"). Cardon answered the petition denying liability. The motions for summary judgment followed.

In reviewing the decision of the Bankruptcy Court, this court may only set aside the findings made by that court if they are clearly erroneous. However, the legal conclusions and application of legal standards by that court are subject to complete review here. In reviewing the grant of summary judgment, this court conducts a *de novo* review of the evidence in the light most favorable to the party appealing and determines whether there is any genuine issue of material fact and whether the appellees are entitled to judgment as a matter of law.

This court has had an opportunity to review the record, has considered the briefs, heard oral argument, and has considered the findings of fact and conclusions of law made by the Bankruptcy Judge. The findings are well-grounded on the evidence before that court. Indeed, the appellant hardly disputes any of the findings made by the Bankruptcy Court Judge but argues that as a matter of law that the court's decision should be reversed.

To understand the legal argument of the appellant, it will be necessary to set forth briefly the factual and procedural history of this case in this court and also in other courts where related proceedings have been filed and are pending.

## STATEMENT OF CASE AND PROCEDURAL HISTORY

Prior to July 10, 1985, Oneida Motor Freight, Inc. ("Oneida"), was a party to Collective Bargaining Agreements with various local unions associated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The agreements provided that Oneida was obligated to make contributions to several multi-employer pension funds including the Philadelphia Fund and New England Fund.

Pursuant to MPPAA, an employer who withdraws from a multi-employer pension fund, thereby ceasing to make contributions to the fund, incurs withdrawal liability which is the employer's actuarially determined proportion of the unfunded, vested liability of the fund. Moreover, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1301, all companies under common control with the withdrawing employer are deemed to be jointly and severally liable for that withdrawal liability.

On July 10, 1985, Oneida filed a voluntary petition in bankruptcy in the United States Bankruptcy Court for the District of New Jersey pursuant to Chapter 11 of the Bankruptcy Law ("Oneida Bankruptcy"). At the same time, it ceased to make contributions to the appellees and shut down the facilities at which participants of the Funds were employed.

At that time, Oneida was a New Jersey corporation owned by Donald T. Singleton, who held 100 percent of the outstanding shares. At the same time, Cardon was a New York corporation owned entirely by Carrie Singleton, the wife of Donald Singleton. The Singletons had been married for some time and were not separated under a decree of divorce or of separate maintenance.

The relationship between Cardon and Oneida is important. Cardon's assets con-

sisted of a terminal located at 1394 Military Road in Tonawanda, New York. It had no income other than that derived from a lease to Oneida. Although the lease provided for a stated monthly rental to be paid by Oneida to Cardon, that amount was not paid on a regular basis. Rather, an inter-company account was maintained on the books of Oneida for Cardon. Each month an entry was made debiting the rent due to Cardon, and an amount sufficient to meet the debts of Cardon was transferred from Oneida to Cardon as an advance against rent. Prior to July 10, 1985, no debts were incurred by Cardon other than those which were covered by the amounts paid by Oneida. The only bills that were paid on a regular basis were mortgages, taxes, and a stipend entitled "wages" to two of the children of Donald T. and Carrie Singleton. Neither performed any work for their wages. After July 10, 1985, the date of the bankruptcy filed by Oneida, Cardon had no income.

On March 6, 1986, the trustees of the Philadelphia Fund sent demand letters to the debtor, Oneida, and other members of the control group, including Cardon, setting forth their obligation to pay Oneida's withdrawal liability. In October of 1985, Cardon was dissolved, and on November 12, 1985, the New England Fund filed a Proof of Claim in the Oneida Bankruptcy for $198,168.00. On November 22, 1985, the Philadelphia Fund ·filed a Proof of Claim in the Oneida Bankruptcy in the amount of $1,016,716.79. Shortly before that, on November 6, 1985, the New England Fund sent a letter to Cardon and others in the Oneida group advising them of their obligation to pay Oneida's withdrawal liability. The Philadelphia Fund sent a similar demand to Cardon, Oneida, and others in the control group by letter of March 6, 1986.

Negotiations proceeded in the Bankruptcy Court in New Jersey, where the Oneida bankruptcy proceeding was pending. The Pension Funds participated in the negotiations and the drafting of a disclosure statement of a plan of reorganization for Oneida. This was memorialized in a document entitled the "Singleton Settlement Agreement." According to this plan, the estate would release all claims against Singleton, members of his family, and members of the control group in consideration of the contribution of $2 million to be made by Singleton, his relatives, and corporations owned and controlled by him or his relatives. The Funds objected to the proposed plan of reorganization and settlement agreement. The plan was amended and specifically excluded any claims involving withdrawal liability under the MPPAA.

In July of 1986, Cardon sold its real estate and trucking terminal for $1,200,-000.00. In August of that year, $200,-000.00 and $180,000.00 from the proceeds of the sale were paid to Donald Singleton, allegedly for a debt, and to Carrie Singleton in behalf of a payment of an alleged debt due to OMF Pennsauken, Inc, a company in the control group. In September of 1986, the remaining proceeds from the sale—$705,000.00—were paid by Carrie Singleton, the sole stockholder of Cardon, to Oneida. According to the appellant, the contribution of $705,000.00 represented a payment for the benefit of all creditors of Oneida pursuant to the Plan of Reorganization. Despite the receipt of the notice from the Funds of the Funds' status as a creditor, neither Cardon nor Carrie Singleton took any steps to investigate the question of the creditor status of the Funds, nor did Cardon initiate arbitration or request information concerning this obligation within the time limits prescribed by MPPAA, which expired prior to January 12, 1987. Further, no payments were made in accordance with the demands which were made by the Funds. On ·January 12, 1987, the Funds initiated this action by filing an involuntary petition of bankruptcy against Cardon.

The records of the New York State Department of Taxation and Finance indicate that Cardon's certificate of dissolution was filed on September 22, 1986. Although the assets of Cardon were sold in July of 1986, distribution was not made to Carrie Singleton until August and September of 1986. This was several months after Cardon had received notice of the creditor status of the

Fund and several months after the initial payment was due.

On October 30, 1986, the New England Fund commenced an action for collection of withdrawal liability in the United States District Court in Massachusetts alleging that Donald T. Singleton and six other corporations, not including Cardon, were under the common control of Oneida. The Philadelphia Fund has intervened in that action which is still pending in the District of Massachusetts. Cardon is not a party in that action.

In March of 1987, Donald T. Singleton and six of his corporations, including Cardon, instituted a declaratory judgment action against the Funds concerning withdrawal liability in the United States District Court in New Jersey. This action was stayed by the District Court Judge and finally was administratively dismissed without prejudice to reinstate pending the completion of discovery in other cases. In August of 1988, the New York State Teamsters Conference Pension and Retirement Fund [New York Fund] instituted an action for collection of withdrawal liability in the Northern District of New York. Donald Singleton and five other entities are defendants there, but not Cardon.

In answer to the involuntary petition, Cardon admitted it was dissolved and that Donald Singleton had received the net proceeds of the sale in the amount of at least $705,000.00, which proceeds were used to satisfy his obligation under the Oneida Plan of Reorganization. Neither of the Funds had notice of the dissolution of Cardon or the transfer of its assets to satisfy Oneida debts.

There came a time in the bankruptcy proceeding when Cardon made requests for certain documents which related to the calculation of the amount due. The Funds objected to these requests and moved for a protective order. The protective order was granted by Bankruptcy Judge McGuire on December 3, 1987. Judge McGuire determined that the debtor had timely failed to seek arbitration and thus defaulted and waived its right to a decision on the amount due. In effect, the court also ruled that

there was no *bona fide* dispute as to Cardon's membership in the Oneida control group. The Bankruptcy Court held that Cardon's failure to initiate the review and arbitration procedure required by MPPAA constituted a waiver of any defense as to either the existence or the amount of Cardon's withdrawal liability. This ruling was affirmed by this court in *In re Cardone Realty*, 99 B.R. 202 (W.D.N.Y.1989).

## DISCUSSION

 This appeal raises some of the questions decided in the prior appeal and also presents some additional issues. In this appeal, the appellant argues that the appellees lacked standing to file a petition because there is a *bona fide* dispute as to the claim. 11 U.S.C. § 303(b)(1). The appellant states that there is a dispute as to whether Cardon was under common control with Oneida and whether Cardon incurred withdrawal liability payable to the Funds. Appellant argues that even if it had incurred withdrawal liability to the Funds, it contends that it had satisfied that liability by contributing $705,000.00 to the Oneida Plan of Reorganization. According to Cardon, this was done with the blessing of the Pension Funds. Appellant argues that the Bankruptcy Court and this court improperly found that it could not dispute the claims on the basis that it had not made a timely application for arbitration.

Unfortunately for the appellant, the facts do not support these assertions. It is apparent from the admissions made by the Singletons and the facts relevant to the relationship between Oneida and Cardon that Cardon was a member of the Oneida control group and that in fact it did owe money to the Funds. Mere assertion by the appellant to the contrary is not sufficient to make a *bona fide* dispute.

 The appellant argues that the involuntary petition under section 303 of the Bankruptcy Code must be dismissed because the appellant cannot show that the debtor was failing to pay its debts as they became due. 11 U.S.C. § 303(h)(1). Cardon argues that when this involuntary petition was filed, the appellant was a dis-

solved, non-operating entity with no debts and no creditors, that it had carried on no business, incurred no liabilities, and that it had owned no assets for six months immediately preceding the filing of the petition.

In a Chapter 7 proceeding, the Second Circuit held in *In re Cedar Tide Corp.*, 859 F.2d 1127, 1133 (2d Cir.1988), *cert. denied sub nom.*, *Chandler's Cove Inn, Ltd. v. Cedar Tide Corp.*, 490 U.S. 1035, 109 S.Ct. 1933, 104 L.Ed.2d 405 (1989), that a dissolved corporation may be a debtor under the Bankruptcy Code and may be the subject of an involuntary Chapter 7 proceeding. This holding has been supported in other courts. *Matter of Zoomaire*, 47 B.R. 628, 630 (Bankr.S.D.Ohio 1985). *See also In re Arriola Energy Corp.*, 74 B.R. 784, 790 (Bankr.S.D.Tex.1987) (noting "a Congressional intent to grant ... flexibility and to make it easier to commence involuntary proceedings against debtors").

In this case, Cardon was advised on two occasions of its obligation to pay withdrawal in accordance with the dictates of *IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 127 (3d Cir. 1986). The Funds filed proofs of claim in November 1985 for withdrawal liability in the Oneida bankruptcy and notified Cardon and others in the control group. Furthermore, the demand letters advising of withdrawal liability were sent in 1985 and on March 6, 1986. The letters provided a schedule of payments in the amount which Cardon was required to pay on a quarterly basis under 29 U.S.C. § 1399(c)(2). As appellee makes clear in its letter to the court, Item 14, the argument of appellants that the debtor corporation was not in existence at the time of the involuntary Chapter 7 filing is specious. New York Business Corporation Law § 1005 (McKinney 1986) provides that after dissolution, when a corporation is in the process of winding up its affairs, it shall distribute its remaining assets only after paying or adequately providing for payment of its liabilities. From the record, it is evident that during the time when Cardon was winding up its affairs pursuant to § 1005, it was aware of the claims of the Funds but simply chose to ignore them. Neither Cardon nor its prin-

cipals informed appellants of the decision to dissolve or distribute the assets of the corporation. Considering the relationship between Oneida, Cardon and the Funds, Cardon was unable to meet its debts as they became due when the petition was filed.

There is no merit to appellant's claim that there is but a single debt. In this case, there were two Funds and two separate debts. *See In re Garland Coal & Mining Co.*, 67 B.R. 514, 520 (Bankr.W.D. Ark.1986).

■ The court also rejects Cardon's claim that the Bankruptcy Court was an improper substitute for a collection proceeding in the United States District Court. In fact, because of the circumstances of this case and the payment of funds to insiders, this Bankruptcy Court was the most appropriate place for the proceeding to be held in order to carry out the Congressional intent to maintain the vitality of multi-employer pension funds. *See Park South Hotel Corp. v. New York Hotel Trades Council*, 851 F.2d 578, 580 (2d Cir. 1988) (setting forth Congressional purpose). Although not a case involving MPPAA funds, the remarks of the District Court in *In re H.I.J.R. Properties Denver*, 115 B.R. 275, 279 (D.Col.1990), are appropriate under these circumstances: "Granting the petition will ensure an orderly ranking of creditors' claims, one of the central purposes of the Bankruptcy Code, since it will enable Mr. Shideler to participate ratably with other creditors in the liquidation of H.I.J.R. Properties' assets." (Citation omitted.)

Accordingly, the judgment of the Bankruptcy Court is affirmed.

## THE AWARD OF COSTS, DAMAGES, AND/OR ATTORNEYS' FEES

■ In view of the decision of the court affirming the decision and order of the Bankruptcy Judge, the application of the appellant for attorneys' fees and costs is denied. In fact, the circumstances require that the court award double costs to the

appellees for the egregious conduct of the appellant during this proceeding.

There are a number of reasons for this award. In the presentation of its argument, the appellant ignored the fact that the "Singleton Settlement Agreement" was amended after objection by the Funds, and as a result, the original proposed plan of reorganization was amended to provide for the protection of the Funds' claim. In its factual statement and legal argument, the appellant simply ignored this most important consideration.

Therefore, pursuant to Rule 38 of the Federal Rules of Appellate Procedure, there shall be an award of double costs to the appellees. *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 517 (2d Cir.), *cert. denied sub nom., Rothman v. New York State Dept. of Transp.*, 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985); *In re Lauricella*, 105 B.R. 536, 541 (9th Cir.B.A.P.1989). The appellees shall file an affidavit setting forth their claim for double costs and fees, if appropriate.

So ordered.