**In re CARDON REALTY CORPORATION,**
**Debtor.**

**Carl L. BUCKI, as Trustee of the Estate of Cardon Realty Corp., Plaintiff,**

**v.**

**Donald T. SINGLETON and Carrie Singleton, Defendants.**

**Bankruptcy No. 87–10054 M.**
**Adv. No. 91–1123 M.**

United States Bankruptcy Court,
W.D. New York.

Oct. 8, 1992.

Cohen Swados Wright Hanifin Bradford & Brett, (Herman P. Loonsk, of counsel), Buffalo, N.Y. for plaintiff.

Goldstein, Navagh, Bulan & Chiari (Harold P. Bulan, of counsel), Buffalo, N.Y. for defendants.

Brach, Eichler, Rosenberg, Silver, Hammer & Gladstone (Arthur L. Porter, Jr., of counsel), Roseland, N.J., for defendants.

BERYL E. McGUIRE, Chief Judge.

The above entitled case was initiated against Cardon Realty Corporation (Cardon) through the filing of an involuntary petition by the Teamsters Pension Trust Fund of Philadelphia and Vicinity (Philadelphia Fund) and the New England Teamsters and Trucking Industry Pension Fund (New England Fund) (collectively, the "Funds"). Although contested, an order for relief was entered against Cardon in March of 1990. For a history of the case to that juncture *see In re Cardon Realty Corp.*, 124 B.R. 630, 630–633 (W.D.N.Y. 1991).

The plaintiff, Carl L. Bucki, is the trustee of the Cardon estate. On April 18, 1991, the trustee initiated the above captioned adversary proceeding against Donald & Carrie Singleton to recover certain payments made to them in connection with the prepetition liquidation of Cardon's assets. The trustee has moved for summary judgment on his first two causes of action. The Defendants have filed a cross motion for summary judgment.

The Court grants partial summary judgment on Plaintiff's first and second causes of action. The Court denies summary judgment with respect to Plaintiff's request for attorneys' fees on the recovery of the fraudulent conveyances and preferential transfers and the request for joint and several liability. The Court grants Plaintiff summary judgment in all other respects. Defendants' cross motion for summary judgment and request to reduce the trustee's claim to fifty (50) percent of the Funds' claims to unfunded vested benefits are denied.

## I.

The two causes of action at issue are core matters as that term is defined by 28 U.S.C. § 157(b). By virtue of a general order of reference entered in the United States District Court for the Western District of New York, this Court has jurisdiction to issue an appropriate order in this matter.

## II.

The following facts are not disputed. Oneida Motor Freight, Inc., ("Oneida"), a New Jersey corporation solely owned by Donald Singleton, filed Chapter 11 Bankruptcy in New Jersey on July 10, 1985. Oneida was party to collective bargaining agreements with local unions and was obligated to make contributions to the Funds. Oneida was responsible to the Funds for withdrawal liability pursuant to the Multi–Employer Pension Plan Amendments Act of 1980 ("MPPAA").

During the Oneida bankruptcy, in an attempt to fashion a plan of reorganization, a

settlement agreement was entered into by Oneida and the Official Committee of Unsecured Creditors of Oneida ("Singleton Settlement Agreement"). The agreement provided:

1. Singleton[1] shall pay to the Estate before the Effective Date of the Joint Plan the sum of Two Million Dollars ($2,000,000), which funds will be applied to the payments set forth in the Joint Plan to Class 8 Unsecured Claimants, as contained in Article IV, Sections 4.7 and 4.8 of the Joint Plan.

2. The Debtor in Possession, Committee, and the Estate do hereby remise, release and forever discharge Donald Singleton, his relatives, and corporations or entities controlled or owned by Donald Singleton or his relatives, and their successors, heirs, or assigns from any and all debts, obligations promises ... which the Debtor In Possession, the Estate or the Committee ever had, or now have, up until the date of this Agreement....

3. This Settlement Agreement ... is intended to release and discharge only those claims that the Debtor In Possession or a Trustee appointed under the Code could assert or could have asserted against Singleton[2] and shall be without prejudice to and shall not release or discharge any claims of individual creditors against Singleton, including any claims involving withdrawal liability under the Multi–Employer Pension Plan Amendments Act, 29 U.S.C. 1381 *et seq.*

The New England Fund filed a Proof of Claim in the Oneida bankruptcy for $198,-168 on or about November 12, 1985. The Philadelphia Fund filed a Proof of Claim for $1,016,716.79 on or about November 22, 1985. A plan was confirmed in the Oneida bankruptcy on August 14, 1986. According to Defendants, the Funds received payment of approximately 27.5 percent of their claims through the plan. (¶ 8. First Separate Defense of Amended Answer).

Cardon was a New York corporation solely owned by Carrie Singleton, Donald Singleton's wife. Previously, it was held that Cardon was a member of the Oneida control group and that Cardon owed money to the Funds;[3] therefore, Cardon was jointly and severally liable for Oneida's withdrawal liability. Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1301 et seq. A letter was sent by the New England Fund to Cardon on or about December 12, 1985, and by the Philadelphia Fund on or about March 6, 1986, informing Cardon that Cardon was obligated to pay Oneida's withdrawal liability as a member of the control group.

A dissolution of Cardon was authorized by resolution of all the shareholders entitled to vote at a special meeting held on or about October 13, 1985. The Certificate of Dissolution ("Certificate"), pursuant to section 1003 of the New York Business Corporation Law, was signed by Carrie Singleton, as President, and Robert Muller, as Secretary. The certificate was stamped "received" by the Department of Taxation and Finance of New York on September 22, 1986.

Cardon's only assets, which consisted of real estate and a trucking terminal located at 1394 Military Road, Tonawanda, New York, were sold in July 1986 for $1,200,000. The proceeds were distributed as follows:

1. Distribution on or about July 31, 1986 to Donald Singleton by check # 1094 in the amount of $200,000 drawn on Cardon's account. ("Transfer 1").

2. Distribution on or about August 1, 1986, to Carrie Singleton by check # 1095 in the amount of $180,000 drawn on Cardon's account. ("Transfer 2").

3. Distribution on or about August 1, 1986, to Carrie Singleton by check # 1096 in the amount of $705,000 drawn on Cardon's account. ("Transfer 3").

An involuntary bankruptcy petition was filed by the Funds against Cardon on January 12, 1987. The New England Fund and

---

1. "Singleton" referred to Donald Singleton, his relatives or corporations or entities owned or controlled by Donald Singleton or his relatives.

2. *See supra* note 1.

3. *In re Cardon Realty Corp.,* 124 B.R. 630, 633 (W.D.N.Y.1991).

the Philadelphia Fund filed Proofs of Claim in the Cardon bankruptcy for $198,168 and $1,090,788.91 respectively.

The Trustee has filed a complaint against Donald and Carrie Singleton to recover the payments made to them in connection with the prepetition liquidation of Cardon's assets. Specifically, the Trustee's first cause of action is to recover Transfers 1 and 2, as preferences, as well as transfers made to Carrie Singleton in the amount of $52,500 by Cardon, as a fraudulent conveyance. The trustee seeks to hold Defendants jointly and severally liable for the transfers totalling $432,500 plus interest and attorneys' fees. The second cause of action is to recover Transfer 3 as a fraudulent conveyance pursuant to New York Debtor and Creditor Law §§ 273–276, holding Defendants jointly and severally liable for the same.

The Defendants' answer denied the material allegations of the first two causes of action and interposed six "defenses." The trustee then moved for summary judgment on the first two causes of action. Defendants filed a cross motion for summary judgment, seeking dismissal of the causes of action and a declaration "that the Trustee's claim is limited to fifty percent (50%) of the Funds' claim to unfunded vested benefits purportedly allowable to Cardon Realty Corp."

## III.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Generally, the burden is on the moving party in its summary judgment motion to show that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Burke v. Bevona,* 931 F.2d 998, 1001 (2d Cir.1991). However, if a respondent to a motion at trial would have the burden of proof on a particular issue, then the respondents must demonstrate on that issue alone that a genuine dispute as to a material fact exists. *Republic Nat. Bank v. Eastern Airlines, Inc.,* 815 F.2d 232, 238 (2d Cir.1987). Most important, the factual dispute must be both genuine and

material. *Id.* " 'The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment....' " *Id.* citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## A. PREFERENCES

To be voidable by a trustee, a transfer of an interest of a debtor in its property must be:

(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made ... (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and (5) that enables such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of this title [11 USCS §§ 701 et seq.]; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 USCS §§ 101 et seq.]. 11 U.S.C. § 547(b).

If, as here, the debtor is a corporation, the term "insider" includes an officer, director, or person in control of the debtor as well as a relative of such a person. 11 U.S.C. § 101(31)(B). A relative, of course, includes a spouse. 11 U.S.C. § 101(45). The defendant, Carrie Singleton, was an officer and director of Cardon as well as its sole shareholder, and Donald Singleton was her husband. Therefore, both Defendants are insiders.

As noted earlier, the bankruptcy case was initiated on January 12, 1987. In August of 1986, Cardon transferred $200,-000 to Donald Singleton in payment of an antecedent debt due him for redemption of his stock. In that same month Cardon also paid Carrie Singleton $180,000 in repayment of a loan owed by Cardon to OMF Pennsauken, Inc. ("OMF"), which loan obligation had been assigned by OMF to Mrs. Singleton. Therefore, each of the above

transfers of Cardon's property, which was made within one year from the date of filing, was for the benefit of creditors on account of antecedent debts.

It is clear that at the time of the above transfers, Cardon was insolvent.[4] Cardon's assets were sold for $1,200,000 in July of 1986, and its liabilities to Defendants and to the New England and Philadelphia Funds approximated $1,600,000.[5] Although the claims of the Funds would have been on a parity with Defendants' claims in a chapter 7 case, the Funds, of course, received nothing. Thus, each of the above-described payments are voidable under the provisions of section 547. Section 550 permits the trustee to recover, for the benefit of the estate, the value of the property from the initial transferee, Carrie Singleton.

### B. FRAUDULENT CONVEYANCES

As previously indicated, the trustee seeks to recover the $705,000 transfer by Cardon to Carrie Singleton and the transfers totalling $52,500 by Cardon and a tenant of Cardon to Mrs. Singleton as fraudulent conveyances under New York law.

#### 1. THE $705,000 TRANSFER

■ It is not disputed that on August 1, 1986, Cardon transferred to Carrie Singleton a check for $705,000 which was deposited into the joint checking account of Carrie and Donald Singleton. The New England and the Philadelphia Funds in November 1985 and March 1986, respectively, had sent notice to Cardon of its withdrawal liability. The check indicated that the transfer was a "partial liquidating dividend". Carrie Singleton then transferred $700,000 to the Oneida Estate to fund Oneida's plan of reorganization.

Section 544(b), Title 11 U.S.C., provides that a trustee may avoid a transfer of any

interest of a debtor in property that is avoidable under applicable law by a creditor holding an allowable unsecured claim at the time of the transfer. *See Matter of Hall*, 22 B.R. 942 (Bankr.M.D.Fl.1982). The Funds, of course, held such claims at the time in question. To attack this transfer, the trustee relies upon section 273 of New York's Debtor and Creditor Law which reads:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

■ In the context of a transfer without consideration, New York law provides the trustee with a presumption of insolvency. *See In re O.P.M. Leasing Services, Inc.*, 40 B.R. 380, 393 (Bankr.S.D.N.Y.1984), *aff'd*, 44 B.R. 1023 (S.D.N.Y.1984), *citing In re Tabala*, 11 B.R. 405, 408 (Bankr.S.D.N.Y. 1981). In an opinion authored by Circuit Judge Augustus N. Hand in *Feist v. Druckerman*, 70 F.2d 333, 334–335 (2d Cir. 1934), that presumption was explained as follows:

> ... a *voluntary* conveyance made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent.

As indicated above, the trustee need only show that there was no consideration for the transfer.[6] It is not disputed that Carrie Singleton did not provide consideration in return for the $705,000. Therefore, there is a presumption of insolvency to which Defendants have presented no evi-

---

**4.** 11 U.S.C. § 101(32) defines insolvency as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation."

**5.** $200,000 (debt to Donald Singleton) + $180,-000 (debt to OMF) + $198,168 (claim of New England Fund) + $1,016,716.79 (claim of Philadelphia Fund) = $1,594,884.79.

**6.** Fair consideration is given for property "[w]hen in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied...." New York Debtor and Creditor Law § 272.

dence to the contrary.[7] The $705,000 transfer constitutes a fraudulent conveyance. Section 550 permits the trustee to recover for the benefit of the estate the value of the property from the initial transferee, Carrie Singleton.

## 2. $52,500 TRANSFER

■ The trustee has alleged that Carrie Singleton received rental payments due to Cardon in the amount of $7,500 per month, totalling $52,500. It is not disputed that beginning in or around January 1986, Carrie Singleton began to personally receive rental payments that were due Cardon for the use of real estate owned by Cardon. (Plaintiff's Exhibits 31–34). Defendants have presented no evidence that Cardon received any consideration for the transfer; therefore, Cardon is presumed to be insolvent at the time of the transfers.[8] Defendants have provided no evidence to the contrary. Therefore, the transfers constitute fraudulent conveyances pursuant to New York's Debtor and Creditor Law § 273. Section 544(b) permits the trustee to step into the shoes of OMF or the Funds, as unsecured creditors, to avoid the transfer.[9] Section 550 permits the trustee to recover the amount of the transfer from the initial transferee, Carrie Singleton.

## IV.

## DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

The Court would initially like to comment that Defendants' brief was replete with frivolous arguments and defenses. On at least one occasion, the Court considered an argument made by Defendants, only to find that the case cited by Defendants was completely contrary to their position. The Court will not go as far as to say that

Defendants or Defendants' counsel were attempting to mislead this Court; however, disingenuous arguments were made that were not supported by the evidence as submitted by the Defendants or by the cases.

## A. PREFERENCES

■ In an attempt to prevent avoidance by the trustee of the $180,000 transfer to Carrie Singleton, Defendants have erroneously argued that Carrie Singleton was not an insider. Defendants' argument is based on the assertion that Mrs. Singleton did not determine policy or involve herself in the management of Cardon, citing *In re N & D Properties, Inc.*, 799 F.2d 726 (11th Cir. 1986) for this proposition. In fact, that case stands for the opposite. In that case, the court was determining whether a shareholder was an insider *prior* to the time that the shareholder became an officer of the debtor-corporation. (Emphasis added). The court explicitly stated that the shareholder "clearly was an insider ... when she became secretary of the debtor." *Id.* at 732. It is irrelevant whether Carrie Singleton actually "controlled" Cardon, and there is no meritorious dispute as to Mrs. Singleton's status as an insider.

■ Additionally, Defendants, at page 27 of their brief dated February 3, 1992, attempt to argue that the $180,000 payment to Mrs. Singleton was not "to or for the benefit of a creditor." However, Mrs. Singleton received the payment as assignee of OMF. (¶ 5 Defendants' Answer and Separate Defenses). As assignor, OMF transferred to Carrie Singleton all right, title and interest to the monies assigned. See New York General Obligations Law § 13–105 (McKinney 1989); *Smith v. New York*, 74 Misc.2d 723, 724, 344 N.Y.S.2d

---

7. Nonetheless, the prior determination of insolvency with respect to the preference action and Section 101(32) will more than likely satisfy the definition of insolvency in NY Debtor and Creditor Law § 271 which states that "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

8. *See supra* page 77.

9. Defendants' Exhibit 19 establishes OMF as a creditor of Cardon at the time of the transfer. An OMF financial statement dated 6/30/85 lists an asset of $180,000, which represents money owed to OMF by Cardon. The New England Fund sent notice to Cardon in November 1985 of its withdrawal liability. Additionally, Donald Singleton was aware of the claims of the Philadelphia Fund by way of the Oneida proceeding.

799, 801 (N.Y.Sup.Ct.1973). Therefore, Mrs. Singleton received the transfer as a creditor in repayment of a debt. Defendants would invite the Court to determine that she did not benefit from the transfer because allegedly the other shareholders of OMF (her four children) took their proportionate share of the $180,000 by "pick[ing] it up on their income tax returns" upon the dissolution of OMF. (Defendants' Exhibit 20). However, this Court is not concerned with what Mrs. Singleton did with the money following her receipt of it as assignee. The transfer was "for the benefit of a creditor."

▮▮▮ Lastly, Defendants, at page 30 of their brief dated February 3, 1992, argue that even if the $180,000 transfer were preferential, the trustee cannot recover from Carrie Singleton because she was merely a conduit of the funds and not an initial transferee. This Court does not agree.[10]

Generally, courts have recognized that some persons may receive property for no reason other than to transfer it to a debtor or third party. In fact, Nedlloyd, the entity who received a transfer in the case cited by Defendants, *In re Black & Geddes, Inc.*, 59 B.R. 873 (Bankr.S.D.N.Y.1986), did exactly that. Nedlloyd received the payment as agent for Hoegh and paid the money over to Hoegh. In this case Carrie Singleton received $180,000 as assignee of OMF. Mrs. Singleton cannot be considered a mere conduit under the circumstances. Mrs. Singleton was an initial transferee from whom the trustee may recover.[11]

## B. FRAUDULENT CONVEYANCES

▮▮▮ Defendants have also moved for summary judgment, seeking an order declaring that the $705,000 transfer to Carrie Singleton was not a fraudulent conveyance. Defendants argue that Cardon received consideration for the transfer of $700,000, which was allegedly made to Carrie Singleton in trust for the creditors of Oneida.[12]

The evidence submitted by Defendants does not support the assertion that the money was held in trust.[13] Mrs. Singleton's deposition testimony reflects her ignorance with respect to the receipt of the $705,000. She stated she wasn't sure why she received the money but guessed it was because she was the owner of Cardon and the money was part of the closing. (Plaintiff's Exhibit 30). Furthermore, Donald Singleton responded affirmatively to the statement that Mrs. Singleton received the money because of her status as sole shareholder of Cardon. (Plaintiff's Letter Exhibit B at 80). The following evidence also fails to support Defendants' trust theory: (a) the check was made out to Carrie Singleton as a "partial liquidating dividend," (b) the check was deposited into Carrie's and Donald's personal joint checking account, and (c) although the check was for $705,000, Carrie Singleton only transferred $700,000 to the Oneida Plan; however, there was no indication that the $5,000 deposit was treated any differently than the $700,000 deposit, allegedly held in trust for Oneida's creditors.

This Court does not accept Defendants' efforts to cloak the $700,000 transfer in

**10.** See John E. Theuman, J.D., Annotation, "What Constitutes 'Initial Transferee' Under § 550(a) of Bankruptcy Code, Which Permits Recovery of Property, or Value Thereof, from Initial Transferee of Property to Extent Transfer is Avoided," 92 A.L.R.Fed. 631 at § 3 (1989).

**11.** Because Carrie Singleton was an initial transferee, she cannot avail herself of the "good faith" defense of section 550(b) as argued by Defendants. Nonetheless, it is hard to imagine the existence of "good faith" concerning the transfers at hand.

**12.** When considering whether the transfer to Mrs. Singleton was "in trust" for Oneida's credi-

tors, this Court will disregard the affidavits of Carrie and Donald Singleton filed on June 26, 1992, as they relate to the existence of a trust. The affidavits, especially that of Carrie Singleton, are contradictory to prior deposition testimony that was submitted by Defendants. "[A] party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. U.S.,* 814 F.2d 120, 124 (2d Cir.1987).

**13.** *See Agudas Chasidei Chabad v. Gourary,* 833 F.2d 431, 433–434 (2d Cir.1987) for the state law elements of a trust.

trust theory. Such theory cannot shield transfers which, though ultimately paid to Oneida's creditors, are fraudulent as to Cardon's creditors. The evidence viewed in the light most favorable to Defendants cannot support a reasonable inference that the $700,000 was held in trust for the benefit of Oneida's creditors. Therefore, the transfer to Carrie Singleton was made without consideration and is fraudulent under New York's Debtor and Creditor Law § 273.

■ Moreover, even if this Court were to accept Mrs. Singleton's argument that she held the monies in trust, the transfer was still without consideration. Defendants claim Cardon received a release by Oneida's creditors committee as consideration for the $700,000. Article VIII of Oneida's Disclosure Statement lists the claims which the Oneida creditors committee believed to have against Singleton which could have been released.[14] The only claim that could possibly involve Cardon is the claim for loss of corporate opportunity with respect to the terminal owned by Cardon. However, the creditors committee would only have a claim against Donald Singleton, personally, pursuant to N.J.Stat.Ann., Title 14A (West 1992), as officer or director of Oneida. Defendants have not established any claim which the creditors committee would have had against Cardon. Therefore, the creditors committee had no claim to release with respect to Cardon, and there is no consideration.

■ Lastly, Defendants argue that even if the transfer is within the definition of a fraudulent conveyance, equitable estoppel theory should prevent the trustee from asserting the claim.[15] Defendants argue that the Funds would be estopped from asserting that the transfer was fraudulent, and the trustee, who has stepped into the shoes of the Funds via section 544(b), is thereby estopped from asserting the same.

The essential elements of equitable estoppel are:

(1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are other than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) and, in some situations, knowledge, actual or constructive, of the real facts. 57 NY Jur 2d, Estoppel, Ratification, and Waiver § 17.

The evidence submitted by Defendants to support the estoppel theory is that lead counsel of Oneida's creditors committee knew that Cardon was to be sold in order to fund the Oneida Plan[16], and presumptively, therefore, that the Funds knew or should have known that Cardon would be liquidated.[17] As previously noted, however, in the Oneida case the Funds clearly reserved their rights to proceed against Singleton, his relatives, and companies owned by him or his relatives. Defendants would translate knowledge that Cardon was to be liquidated into a license for Defendants to liquidate Cardon in contravention of the rights of Cardon's creditors. Such is not the stuff of which estoppel is made. Moreover, even if the Funds were unable to assert that the transfer was

---

**14.** The claims were: (1) Breach of corporate opportunity in the personal acquisition, sale and/or lease of operations of various terminal facilities used by Oneida, (2) Payment of bonuses to Singleton's relatives, (3) Payment of excessive compensation to Singleton's relatives, and (4) Over-funding of the OMF Retirement Trust.

**15.** This argument is also used with respect to the transfer of $52,500 in rental payments to Mrs. Singleton and the $200,000 payment to Donald Singleton. (Page 32 of Defendants' Brief in Opposition).

**16.** See ¶ 3 Certification of Richard B. Honig, dated June 25, 1992.

**17.** Although the Court will accept this as true for the purposes of summary judgment, it was previously believed that the Funds did not have notice of the dissolution of Cardon or the transfer of its assets in satisfaction of Oneida's debts. See In re Cardon Realty Corp., 124 B.R. 630, 633 (W.D.N.Y.1991).

fraudulent, the trustee could step into the shoes of OMF as an unsecured creditor to maintain the action. *See Buffum v. Peter Barceloux Co.*, 289 U.S. 227, 53 S.Ct. 539, 77 L.Ed. 1140 (1933). Also, Defendants obviously have not established any misrepresentation on the part of the Funds, and additionally, a person attempting to get the benefit of an estoppel theory must have clean hands. *See Corning Glass Works v. Southern New England Telephone Co.*, 674 F.Supp. 999, 1012 (W.D.N.Y.1987) *aff'd*, 835 F.2d 451 (2d Cir.1987). Thus, Defendants cannot avoid the recovery of a fraudulent transfer on an equitable estoppel theory. The $705,000 transfer to Carrie Singleton may be recovered as a fraudulent conveyance by the trustee.

## C. REDUCTION OF WITHDRAWAL LIABILITY BY FIFTY PERCENT

Defendants, in their cross motion for summary judgment, seek to have the withdrawal liability claims of the Funds reduced by fifty (50) percent pursuant to 29 U.S.C.A. § 1405. That provision limits the amount of withdrawal liability that may be assessed against an insolvent employer.

The request to reduce the Funds' claims by fifty percent is an attempt to limit the amount of the Funds' claims in this case. It is inappropriate to resolve an objection to the amount of a creditor's claim in the context of actions to recover preferential transfers and fraudulent conveyances. Rather, if Defendants have a claim dispute, it should be brought in the proper proceeding, by objecting to the claims. In sum, these are two discrete areas of dispute.

## V. JOINT AND SEVERAL LIABILITY

Plaintiff requests that Carrie and Donald Singleton be held jointly and severally liable for all transfers made to them in contravention of state and federal law. Plaintiff has not provided and the Court has not found any authority for such relief on these causes of action. Therefore, summary judgment will not be granted with

respect to the request for a determination of joint and several liability.

## VI. REQUEST FOR ATTORNEYS' FEES AND PREJUDGMENT INTEREST

▮▮▮▮ An award for attorneys' fees in a fraudulent conveyance action is not appropriate in the absence of a showing of actual fraudulent intent on the part of the defendants. *Orbach v. Pappa*, 482 F.Supp. 117, 121 (S.D.N.Y.1979). Since summary judgment is not appropriate under NY Debtor and Creditor Law § 276 (which requires a showing of actual intent to defraud), and the Court has based its grant of summary judgment on constructive fraud, the request for attorneys fees is denied with respect to the avoidance of the $52,500 and $705,000 transfers to Carrie Singleton. Prejudgment interest, at the New York rate,[18] will be allowed from the dates of the fraudulent transfers.[19] Therefore, as to the fraudulent conveyances, the motion for summary judgment requesting attorneys fees is denied, and the request for prejudgment interest is granted.

▮▮▮ There is no provision in the Bankruptcy Code providing for the award of prejudgment interest on preferential transfers. 4 *Collier on Bankruptcy* ¶ 550.02 at 550–9 (15th ed. 1992). However, many courts have held that the courts have discretion to award prejudgment interest. *See In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1281 (8th Cir.1988). This Court will allow interest from the date of demand (here, from the filing of the complaint, absent proof of demand) for recovery of the preferential transfers. *See In re Nelson Co.*, 117 B.R. 813, 818 (Bankr.E.D.Pa.1990) *aff'd*, 128 B.R. 930 (E.D.Pa.1991). Since there is no authority for the recovery of attorneys' fees with respect to the preferential transfers, that request is denied.

As heretofore set forth, Plaintiff is granted partial summary judgment on the first and second causes of action. Defen-

---

18. N.Y.Civ.Prac.L. & R. 5004 (McKinney 1992).

19. *Shugerman v. Sohn*, 255 App.Div. 866, 7 N.Y.S.2d 587 (1938) *reargument denied*, 255 App.Div. 987, 8 N.Y.S.2d 1004 (1938).

dants' cross motion for summary judgment is denied.

Submit judgment on three days notice.

So Ordered.