**In re CHASE & SANBORN CORPORATION f/k/a General Coffee Corporation, Debtor.**

**Paul C. NORDBERG, as Creditor Trustee for the Estate of Chase & Sanborn Corp. f/k/a General Coffee Corporation, Plaintiff,**

**v.**

**SOCIETE GENERALE, Defendant.**

**Bankruptcy No. 83–00889–BKC–TCB. Adv. No. 86–0495–BKC–TCB–A.**

United States Bankruptcy Court, S.D. Florida.

Nov. 7, 1986.

Ronald G. Neiwirth, of counsel, Sherman & Fischman, Miami, Fla. and Joel S. Weiss, Esanu Katsky Korins & Siger, New York City, for plaintiff.

James L. Kerr, Davis Polk & Wardwell, New York City and Steven C. Marks, Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, Fla., for defendant.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

Plaintiff is a trustee for creditors, installed by a 1984 order confirming a chapter 11 plan which selected plaintiff to pursue avoidable transfers which the debtor and its counsel had neglected. He has already had some 60 actions considered by this court. In this one, filed three days before the two-year statute of limitations provided in 11 U.S.C. § 546(a)(1) expired, he sought the avoidance of three specifically identified transfers. (C.P. No. 1 ¶ 5).

On August 11 (after the statute had run) he filed an amended complaint attempting to add the following unspecified transfers:

"between May 18, 1982 and May 18, 1983, C & S made other transfers to or for the benefit of Defendant, that are avoidable as fraudulent conveyances and/or avoidable preferences, the details of which have been concealed from Plaintiff and are not yet known to Plaintiff despite diligent efforts to ascertain them." (C.P. No. 3 ¶ 5(d)).

Plaintiff cannot defeat the statute of limitations by such an allegation in his initial complaint, much less by amendment after the statute has run.

On September 4, after defendant had answered and seven days before trial, plaintiff moved for leave to file a second amended complaint to add a $450,000 transfer that occurred February 3, 1983 as an additional cause of action under the catchall quoted above. The motion is opposed by defendant. I reserved ruling at trial and now deny the motion.

At trial, plaintiff abandoned his assault on the third transfer he had initially challenged, leaving two transfers to be considered here: (i) $500,000 transferred November 30, 1982 alleged to be a constructively fraudulent transfer under § 548(a)(2); and (ii) $50,000 transferred March 1, 1983 alleged to be either constructively fraudulent under § 548(a)(2) or preferential under § 547(b).

### Transfer of $500,000

On November 30, 1982 Colombian Coffee Co., a separate but affiliated entity, overdrew its account in the defendant bank by $1,033,135 and as of 10:00 a.m. that day, defendant extended credit to Colombian by honoring the overdraw.

That same day, $500,000 was transferred from this debtor's account in another bank to Colombian by wire transfer to defendant's bank with instructions to credit Colombian's account to partially cover the existing overdraft. Another wire transfer of $700,000 from an independent source was also made the same day to cover the overdraw, leaving a credit to the account within hours after it was overdrawn.

This debtor filed for bankruptcy May 18, 1983, six months later.

If we assume (without deciding that point) that plaintiff has proved each element under § 548(a)(2), plaintiff must also bring defendant under the provisions of § 550 in order to recover from defendant.

■ I agree with the defendant that the defendant bank was neither the "initial transferee" or "the entity for whose benefit such transfer was made" for the purposes of § 550(a)(1). The initial transferee and the entity for whose benefit this transfer was made was Colombian. The bank was a mere commercial conduit, crediting Colombian's account with the transferred funds expressly earmarked for that purpose. It was granted no discretion with respect to the funds in question here. *Metsch v. First Alabama Bank of Mobile (In re Colombian Coffee Co.)*, 59 B.R. 643, 645 (Bankr.S.D.Fla.1986). Although this defendant, unlike the Alabama Bank, derived a benefit from this transfer, that fact standing alone does not support a different conclusion.

■ If the bank can be said to be an "immediate or mediate transferee of such initial transferee" for the purposes of § 550(a)(2) because a part of the money was used to satisfy Colombian's debt to the bank for the overdraw, I find that the bank took that sum for value, satisfying a present or antecedent debt (the overdraw), in good faith, and without knowledge of the voidability of the transfer avoided. This nullifies the effect of classifying the bank as an immediate or mediate transferee for the purposes of § 550(a)(2). § 550(b)(1).

It seems more realistic to view this transaction, involving events which occurred within the span of minutes or, at most, a few hours, as being simultaneous. It is impossible now to establish the exact time interval. If they were simultaneous, the bank never became any kind of transferee of this debtor under any view of § 550.

It follows that the complaint must be dismissed with prejudice as to the $500,000 transfer.

No useful purpose would be served by exploring defendant's other arguments, including its seven other affirmative defenses (C.P. No. 9).

### Transfer of $50,000

On March 1, 1983 (within 90 days before bankruptcy), the debtor delivered to the defendant bank a check for $50,000 payable to the bank drawn on its account in another bank. This check bore the notation: "for Allsun Juices Loan". On that day Allsun Juices, a wholly owned incorporated subsidiary of the debtor, owed the defendant $350,000 on a loan received to buy oranges for Allsun's citrus processing business. Allsun Juices' chapter 11 bankruptcy petition was filed in the Middle District of Florida and has been administered separately from the other related debtors in this District.

■ I agree with defendant that this transfer was not "to or for the benefit of a creditor" of this debtor, nor was it "for or on account of an antecedent debt owed" by this debtor. Therefore, plaintiff has failed to prove the first two elements of an avoidable preference under § 547(b). The debts of an incorporated affiliate do not, by that fact alone, become the debts of a debtor in bankruptcy for the purposes of § 547. *See Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2nd Cir.1981).

■ I agree with plaintiff, however, that this transfer was a constructively fraudulent transfer voidable under § 548(a)(2). Plaintiff has proved that the transfer occurred within a year before bankruptcy, that the debtor was then insolvent and that the debtor "received less than a reasonably equivalent value in exchange for such transfer". The parties agree that the satisfaction of another entity's debt, even that of an affiliate, is not the receipt of reasonably equivalent value. *Id.* But defendant argues that plaintiff has not completely eliminated the possibility that there was equivalent value to the debtor for this transfer. I disagree. Plaintiff's proof that there is no record or indication of any consideration to the debtor shifts to defendant the burden of going forward with the evidence, though the ultimate burden of proof remains with the plaintiff. Defendant has been unable to suggest or identify any consideration to the debtor for the $50,000 it received.

The defendant bank is clearly the initial transferee (disregarding an erroneous posting of the funds by defendant) or, in any event, "the entity for whose benefit such transfer was made". The value of this transfer is, therefore, recoverable from defendant under § 550(a)(1).

As is required by B.R. 9021(a), a separate judgment will be entered avoiding the March 1, 1983 transfer of $50,000 from the debtor to defendant under § 548(a)(2) and ordering defendant to pay that sum to plaintiff in accordance with § 550(a)(1). Each party shall bear its own costs.