**In re STEPHEN DOUGLAS, LTD., Debtor.**

**John S. PEREIRA, as Trustee of Stephen Douglas, Ltd., Plaintiff,**

v.

**Sam GOLDBERGER, Defendant.**

**In re HARVARD KNITWEAR, INC., Debtor.**

**John S. PEREIRA, as Trustee of Harvard Knitwear, Inc., Plaintiff,**

v.

**Aron LANDAU, Defendant.**

**Bankruptcy Nos. 189–93696– 353, 189–93895–353.**
**Adv. Nos. 192–1230–353, 192–1262–353.**

United States Bankruptcy Court, E.D. New York.

Nov. 14, 1994.

Partners claims is subject to its security interest.

Donovan Leisure Newton & Irvine, New York City by A. Peter Lubitz, Patrick J. Sullivan, for plaintiff/Chapter 7 Trustee.

Alan R. Bloomfield, Forest Hills, NY, for defendants.

### DECISION ON TRUSTEE'S COMPLAINTS TO SET ASIDE FRAUDULENT TRANSFERS

JEROME FELLER, Bankruptcy Judge.

Before the Court for adjudication, after trials, are two separate adversary proceedings instituted by the chapter 7 trustee of two related companies to set aside as fraudulent, the transfer of certain monies to Defendants by the Debtors. Because the facts and applicable law are so similar, these two adversary proceedings are consolidated herein for purpose of decision.

Upon review of the pleadings, pre-trial and post-trial submissions, trial transcripts, and applicable law, we conclude that the trustee is entitled to separate judgments in each of these adversary proceedings, setting aside the conveyances and authorizing recoveries of the monies transferred to Defendants, with pre-judgment interest computed at the New York rate from the commencement of the lawsuits.

Hereinafter set forth are the Court's findings of fact and conclusions of law required by Fed.R.Civ.P. 52, made applicable to adversary proceedings in bankruptcy cases by Fed.R.Bankr.P. 7052.

## I.

Harvard Knitwear, Inc. ("Harvard") and Stephen Douglas, Ltd. ("Stephen Douglas"), a subsidiary of Harvard (collectively "Debtors"), prior to their cases under the Bankruptcy Code being converted to Chapter 7 liquidations were in the business of manufacturing and selling ladies' and children's apparel to department and specialty stores under various brands and labels. On November 16, 1989 and December 4, 1989, involuntary petitions under Chapter 7 were filed against Stephen Douglas and Harvard, respectively. In response to the involuntary Chapter 7 petitions, Stephen Douglas and Harvard filed, on December 18, 1989, voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. On March 7, 1990, this Court ordered the conversion of the Debtors' Chapter 11 cases to liquidation cases under Chapter 7 of the Bankruptcy Code. John S. Pereira was thereafter appointed Chapter 7 trustee.

## II.

### A. *Adversary Proceeding No. 192–1230–353*

John S. Pereira, the Debtors' Chapter 7 trustee (hereinafter "Trustee" or "Plaintiff"), commenced this adversary proceeding on behalf of Stephen Douglas with the filing of a complaint on April 15, 1992 against Sam Goldberger ("S. Goldberger"). Stephen Douglas paid S. Goldberger the sum of $5,250.00 by means of its check number 432, dated June 21, 1988. The Trustee's investigation failed to locate the existence of any books and records of Stephen Douglas or other documentation, which might support or otherwise justify such payment to S. Goldberger by Stephen Douglas; nor was the Trustee even able to ascertain any business or other relationship between S. Goldberger and Stephen Douglas. Accordingly, the Trustee seeks to set aside and recover the $5,250.00 payment to S. Goldberger as a fraudulent conveyance pursuant to 11 U.S.C. §§ 544(b), 550 and applicable state law.

### B. *Adversary Proceeding No. 192–1262–353*

The Trustee commenced this adversary proceeding on behalf of Harvard with the filing of a complaint on April 17, 1992 against Aron Landau ("Landau") (Landau and S. Goldberger hereinafter collectively are referred to as "Defendants"). Harvard paid Landau the sum of $13,889.39 by means of its check number 7279, dated April 5, 1989. The Trustee's investigation failed to locate the existence of any books and records of Harvard or other documentation, which might support or otherwise justify such payment to Landau by Harvard; nor was the Trustee even able to ascertain any business or other relationship between Landau and Harvard. Accordingly, the Trustee seeks to set aside and recover the $13,889.39 payment to Landau as a fraudulent conveyance pursuant to 11 U.S.C. §§ 544(b), 548, 550 and applicable state law.

## III.

A quintessential purpose of bankruptcy is to enable creditors to share equally in a debtor's assets that form the bankruptcy estate. This goal is undermined by certain pre-bankruptcy transfers of property that unfairly or discriminatorily remove or withhold property from the estate to the prejudice of creditors. To remedy this mischief, the Bankruptcy Code condemns and provides for the avoidance, i.e., the undoing and recovery of some pre-bankruptcy transfers. As indicated, the Trustee brings these lawsuits to avoid and recover certain pre-bankruptcy transfers as fraudulent pursuant to 11 U.S.C. §§ 544(b), 548 and 550. Under 11 U.S.C. § 550(a)(1), a trustee may recover from an initial transferee the property whose transfer was successfully avoided pursuant to 11 U.S.C. § 544 or § 548. Since 11 U.S.C. § 544(b) is dispositive of both these lawsuits, this decision does not address 11 U.S.C. § 548.

Section 544(b) of title 11 of the United States Code enables the trustee, as representative of creditors, to avoid any transfers of property that are voidable under state law by a creditor who has an allowable unsecured claim. Section 544(b), however, contains no original substantive provisions to determine when a transfer is voidable; instead it incor-

porates and makes applicable nonbankruptcy law.[1] The applicable nonbankruptcy law upon which Plaintiff relies is contained in the Uniform Fraudulent Conveyance Act as adopted by the State of New York in Article 10 of its Debtor and Creditor Law (Debtor & Creditor Law §§ 270–281) (McKinney 1990), specifically Section 273, the constructive fraudulent conveyance provision. Section 273 of the New York Debtor and Creditor Law denominates as fraudulent those conveyances made by an insolvent for inadequate consideration, without regard to actual intent.[2] Both insolvency and a lack of fair consideration are prerequisite to a finding of constructive fraud under Section 273.

The burden of proving insolvency and the lack of fair consideration is upon the party challenging the conveyance. *American Inv. Bank, N.A. v. Marine Midland Bank, N.A.*, 191 A.D.2d 690, 595 N.Y.S.2d 537, 538 (App.Div.Dep't 1993); *Rego Crescent Corp. v. Tymon (In re Rego Crescent Corp.)*, 23 B.R. 958, 968 (Bankr.E.D.N.Y.1982); *see* 9 Am.Jur.2d Bankruptcy § 1670 ("Generally, the trustee has the burden of proof in an action or proceeding under the trustee's avoiding powers."). Issues of insolvency and fair consideration must, of course, be determined under the facts of each case. Defendants assert that they gave fair consideration for the Debtors' checks and also dispute the insolvency of the Debtors when they received those checks. They raise no other issues. Accordingly, we now turn to a review and analysis of the record as made by the parties in these lawsuits.

## IV.

### A. *Fair Consideration*

The Trustee demonstrated and it is undisputed that S. Goldberger received payment of $5,250.00 from Stephen Douglas and that Landau received $13,889.39 from Har-

vard. The Trustee's accountants testified that the books and records of the Debtors reflect no consideration or economic benefit passing from Defendants to Stephen Douglas or Harvard. No invoices, loan agreements, records of payment from the Defendants to the Debtors, or any other documentation to support the payments to the Defendants were found by the Trustee. Nor did the Trustee's investigations disclose any connection of the Defendants to the Debtors. Such showings by the Trustee necessitated the Defendants' going forward with some evidence to support their contentions that the Debtors' transfers were in fact made for fair consideration. As one court observed:

> Plaintiff's proof that there is no record or indication of any consideration to the debtor shifts to defendant the burden of going forward with the evidence, though the ultimate burden of proof remains with the plaintiff.

*Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 68 B.R. 530, 533 (Bankr. S.D.Fla.1986), *aff'd* 848 F.2d 1196 (11th Cir. 1988); *Gross v. Russo (In re Russo)*, 1 B.R. 369, 374 (Bankr.E.D.N.Y.1979) ("Since there was no proof that any tangible present consideration passed from [wife of debtor] to [debtor] for the 1973 transfer, the burden of going forward on that issue [of fair consideration] shifted to her.").

The only proof offered by Defendants of consideration to the Debtors was the testimony of one Mayer Goldberger ("M. Goldberger"), the son of S. Goldberger and son-in-law of Landau. The Defendants themselves did not testify. No documents were offered into evidence by Defendants. No corroboration whatsoever of M. Goldberger's testimony was presented. M. Goldberger stated that S. Goldberger, his father, loaned $10,000, in cash, to Stephen Douglas at 11% interest, and S. Goldberger accepted a Ste-

---

**1.** Insofar as here applicable, 11 U.S.C. § 544(b) reads as follows:

> The trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim allowable under section 502 of this title....

**2.** Section 273, in relevant part, provides as follows:

> Every conveyance made ... by a person who is ... insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made ... without a fair consideration.

N.Y. Debtor & Creditor Law § 273 (McKinney 1990).

phen Douglas check in the sum of $5,200 in full satisfaction of the alleged loan. Similarly, M. Goldberger testified that Landau, his father-in-law, loaned Harvard $20,000, in cash, at 11% interest and, Landau accepted a Harvard check in the sum of $13,889.39 in full satisfaction of that alleged loan. S. Goldberger proclaimed that he effectuated these transaction on behalf of Defendants with Michael Binet ("Binet"), a former principal of the Debtors, to whom S. Goldberger said he gave the $10,000 of his father and $20,000 of his father-in-law. According to M. Goldberger the alleged loans were made because banks were paying only 6% interest at the time and that he was desirous of obtaining a greater return on behalf of his relatives.

M. Goldberger testified that promissory notes of the Debtors reflecting the alleged loans were given to him, but they were lost or returned to Binet (although the alleged loans were not fully repaid), and that no copies were made of these purported promissory notes. In support of the alleged loan from S. Goldberger to Stephen Douglas, M. Goldberger asserted that a foreign language document styled a **"hetter isska"**, annexed to the Trustee's pre- and post-trial submissions, show the existence of that loan.[3] The **"hetter isska"**, however, is written on the stationery of an entity identified as "R.B. Capital Corp." and does not indicate that any money was to be received or in fact was received by Stephen Douglas. In fact, the words "Stephen Douglas" appears nowhere on this document. Incredulously, Mr. Goldberger's response was that Jewish law does not require the document to reflect the proper parties. Insofar as the alleged loan from Landau to Harvard, M. Goldberger testified there was a **"hetter isska"**, but in that case it was either lost or returned to Binet. No copy of this alleged document was produced.[4]

Defendants' contention that they loaned money to Stephen Douglas and Harvard is unsupported by anything other than the self-serving, sometimes incredible, testimony of M. Goldberger. They have produced not a scintilla of objective, credible evidentiary facts connecting them to Stephen Douglas and Harvard. In sum, Defendants have failed to satisfy their burden of going forward with proof of fair consideration to the Debtors for the payments they received.

## B. *Insolvency*

▮ It is well settled under New York Debtor and Creditor Law § 273, that a conveyance made by a grantor without consideration at a time when debts are outstanding raises a presumption of insolvency. Judge Augustus Hand articulated the rule in *Feist v. Druckerman*, 70 F.2d 333, 334–35 (2d Cir. 1934) as follows:

> Now, there is a rule of long standing in the New York courts that a *voluntary* conveyance made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent
>
> . . . .
>
> It imposes on the volunteer transferee of one who has creditors the duty of going forward with proof to show the solvency of the transferor in order to prevent the conveyance from being set aside. [Emphasis In Original] [Citations Omitted].

*Accord, ACLI Gov't Sec., Inc. v. Rhoades*, 653 F.Supp. 1388, 1392–93 (S.D.N.Y.1987), *aff'd* 842 F.2d 1287 (2d Cir.1988); *Hasset v. Far West Fed. Sav. & Loan Ass'n (In re O.P.M. Leasing Serv., Inc.*, 40 B.R. 380, 393 (Bankr.S.D.N.Y.1984), *aff'd* 44 B.R. 1023 (S.D.N.Y.1984), *aff'd* 769 F.2d 911 (2d Cir. 1985); *In re Tabala*, 11 B.R. 405, 408 (Bankr. S.D.N.Y.1981); *Corbin v. Franklin Nat. Bank (In re Franklin Nat. Bank Sec. Litig.)*, 2 B.R. 687, 710 (E.D.N.Y.1979), *aff'd* 633

---

**3.** A **"hetter isska"** is a religious documents designed to characterize a loan transaction as a "venture" so as to avoid the biblical prohibition against the taking of interest. *See Barclays Discount Bank, Ltd. v. Levy*, 743 F.2d 722, 724 (9th Cir.1984).

**4.** M. Goldberger's testimony that both a **"hetter isska"** and a promissory note were employed in the alleged transactions makes little sense. Either the asserted dealings were "ventures" or loans, not both.

F.2d 203 (2d Cir.1980); *Gross v. Russo (In re Russo),* 1 B.R. at 369, 379 (E.D.N.Y.1979).

■ In addition to the presumption of insolvency under New York law available to the Plaintiff herein, the Trustee's accountant testified that he had determined, based upon his review of the Debtors' books and records, that Stephen Douglas and Harvard were insolvent at the time of the challenged transfers. Defendants argue that the accountant's testimony was conclusory and that the Trustee therefore failed to sustain his burden of proof in respect of insolvency. These arguments are academic. The Trustee sustained his burden regarding insolvency by virtue of an applicable presumption in each of the two adversary proceedings, and Defendants failed to submit any evidence whatsoever to rebut that presumption.[5]

### V.

■ Plaintiff requests judgments of $5,250.00 and $13,889.39 against Goldberger and Landau, respectively, "plus interest thereon since the date of [each] complaint".

■ Apparently, the Trustee's requests for interest are directed toward pre-judgment interest. Post-judgment interest need not be specifically requested; it is mandated by federal statute. Federal law governs whether post-judgment interest is awarded on a federal court judgment in an action otherwise governed by state law. *Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.),* 964 F.2d 842, 849 (8th Cir. 1992). Under federal law, "[i]nterest shall be allowed on any money judgement in a civil case recovered in a district court." 28 U.S.C. 1961(a). Because a bankruptcy court is a "unit" of the district court (28 U.S.C. § 151), 28 U.S.C. § 1961 applies to bankruptcy court judgments. *Firestone Tire & Rubber Co. v. Goldblatt Bros., Inc. (In re Goldblatt Bros., Inc.),* 61 B.R. 459, 466 n. 4 (Bankr.N.D.Ill. 1986); *DuVoisin v. Anderson (In re Southern Indus. Banking Corp.),* 87 B.R. 518, 520 (Bankr.E.D.Tenn.1988). On the other hand, pre-judgment interest in trustee avoidance actions, though not mandated by statute,

may be awarded in the discretion of the court. On the record of these cases, we believe the Trustee is deserving of redress for the continued retention of the subject funds subsequent to the commencement of these lawsuits. Pre-judgment interest is an appropriate vehicle to accomplish that equitable objective. Accordingly, pre-judgment interest will be allowed from the date of the filing of the complaints and, because the judgments are predicated on New York substantive law, at the New York rate. N.Y.Civ. Prac.L. & R. 5004 (McKinney's 1992) ("Interest shall be at the rate of nine per centum....").

■ The Trustee also seeks reasonable attorneys' fees and reimbursement of related disbursements. However, under New York law, an award of attorneys' fees in a fraudulent conveyance action is not appropriate in the absence of a showing of actual fraudulent intent on the part of a defendant. *Bucki v. Singleton (In re Cardon Realty Corp.),* 146 B.R. 72, 81 (Bankr.W.D.N.Y. 1992); *Orbach v. Pappa,* 482 F.Supp. 117, 121 (S.D.N.Y.1979). Under the traditional American rule, attorneys' fees are not ordinarily recoverable by a prevailing party in federal litigation in the absence of statutory authorization. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The Supreme Court first recognized this principle almost two centuries ago in *Arcambel v. Wiseman,* 3 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796), where it ruled that the courts must respect this "general practice" except where "it is changed, or modified, by statute."

■ New York law provides for the recovery of attorneys' fees only in an action to set aside a conveyance made with intent to defraud. New York Debtor and Creditor Law §§ 276 and 276–a (McKinney's 1990). There is no provision for the recovery of attorneys' fees in actions, like these adversary proceedings, based on Debtor and Creditor Law § 273, New York's constructive fraudulent conveyance statute. Nor has the

---

**5.** Apart from the presumption, we express no opinion as to the adequacy of the Trustee's proof regarding insolvency.

Trustee shown any other basis for departing from the general American rule governing allocation of the costs of litigation, i.e., each litigant must bear its own cost for legal fees. Accordingly, the Trustee's requests for attorneys' fees and reimbursement of related disbursements are denied.

## VI.

Based on all of the foregoing, Plaintiff is entitled to separate judgments in Adversary Proceedings No. 192–1230–353 and 192–1262–353, setting aside the conveyances to each of the Defendants and authorizing recoveries of the monies transferred to them, with pre-judgment interest computed at the New York rate from the commencement of the lawsuits.

**SETTLE SEPARATE JUDGMENTS ON NOTICE TO EACH OF THE DEFENDANTS.**