In re HARVARD KNITWEAR, INC., Debtor.

John S. PEREIRA, as Trustee of Harvard Knitwear, Inc.,

v.

PRIVATE BRANDS, INC., Defendant.

John S. PEREIRA, as Trustee of Harvard Knitwear, Inc.,

v.

BALI JEWELRY, LTD., Defendant.

In re STEPHEN DOUGLAS, LTD., Debtor.

John S. PEREIRA, as Trustee of Stephen Douglas, Ltd., Plaintiff,

v.

PRIVATE BRANDS, INC., Defendant.

John S. PEREIRA, as Trustee of Stephen Douglas, Ltd., Plaintiff,

v.

BALI JEWELRY, LTD., Defendant.

Bankruptcy Nos. 189–93895–353, 189–93696–353.
Adv. Nos. 192–1084–353, 191–1495–353, 192–1053–353 and 192–1054–353.

United States Bankruptcy Court, E.D. New York.

March 19, 1996.

Donovan Leisure Newton & Irvine by A. Peter Lubitz, New York City, for Plaintiff/Chapter 7.

Anderson Kill Olick & Oshinsky, P.C. by Avraham C. Moskowitz, New York City.

### DECISION ON TRUSTEE'S MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS–MOTIONS FOR SUMMARY JUDGMENT

JEROME FELLER, Bankruptcy Judge.

### INTRODUCTION

Before this court for decision are motions and cross-motions for summary judgment in four separate adversary proceedings. The Chapter 7 Trustee for Harvard Knitwear, Inc. ("Harvard") has brought two of these adversary proceedings seeking to set aside as fraudulent the transfer of certain funds by Harvard to Private Brands, Inc. ("Private Brands") and Bali Jewelry, Ltd. ("Bali"), re-

spectively. In both adversary proceedings, the plaintiff has moved and the defendants have cross-moved for summary judgment. The Chapter 7 Trustee for Stephen Douglas, Ltd. ("Stephen Douglas") has brought two other adversary proceedings seeking to set aside as fraudulent the transfer of certain funds by Stephen Douglas to Private Brands and Bali, respectively. The plaintiff has moved and the defendants have cross-moved for summary judgment in these adversary proceedings as well.

As will be discussed more fully below, the facts and applicable law underlying each adversary proceeding and each motion and cross-motion are substantially similar. Therefore, we will render decision on each in this opinion.

## I.

Harvard, and its subsidiary Stephen Douglas, were in the business of manufacturing and selling ladies' and children's apparel to department and specialty stores under various brands and labels. On November 16 and December 4, 1989, involuntary petitions were filed against Stephen Douglas and Harvard, respectively. In response, on December 18, 1989, both Stephen Douglas and Harvard (collectively, the "Debtors"), filed voluntary petitions under Chapter 11 of the Bankruptcy Code. By order dated March 7, 1990, this Court converted both Chapter 11 cases to cases under Chapter 7. John S. Pereira was appointed the Debtors' Chapter 7 Trustee.[1]

Shortly after appointment, the Trustee retained the accounting firm of Eli Rosman, C.P.A. (the "Accountant"), to review and examine the Debtors' books and records. This review turned up numerous payments

made by the Debtors to Bali and Private Brands for which the Accountant found no supporting documentation or evidence of consideration. In addition, the Accountant could ascertain no commercial or business relationship between the Debtors and either Bali or Private Brands. Consequently, the Accountant requested, in writing, that Bali and Private Brands provide documentation or evidence of consideration that would support the suspect transfers. None was forthcoming.

## II.

The Trustee commenced these four adversary proceedings seeking to recover as fraudulent, certain transfers made by Harvard and Stephen Douglas—one lawsuit on behalf of each Debtor against Bali and one lawsuit on behalf of each Debtor against Private Brands (hereinafter, "Defendants" will refer to Bali and Private Brands, collectively). In each, the relevant provision upon which the Trustee's lawsuit is based is 11 U.S.C. § 544(b).[2] Section 544(b) permits a trustee to avoid transfers that are voidable by an actual unsecured creditor under state law.[3] In these adversary proceedings, the applicable state law is the constructive fraud provision of the Uniform Fraudulent Conveyance Act, as adopted by the State of New York in § 273 of the Debtor and Creditor Law.

■ A transfer is a fraudulent conveyance under this provision if it is made without fair consideration by a person who is or will thereby be rendered insolvent. *N.Y. Debt. & Cred. Law* § 273 (McKinney 1990);[4] *see Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260, 1272–73 (S.D.N.Y. 1991). Transfers trapped by this provision are considered "constructively fraudulent"

---

**1.** Mr. Pereira, Trustee for both Harvard and Stephen Douglas, will hereinafter be referred to simply as the "Trustee".

**2.** The complaints in all four adversary proceedings make reference to both 11 U.S.C. § 548 and 11 U.S.C. § 544(b) as the statutory predicates for the fraudulent conveyance actions. However, the Trustee now acknowledges that 11 U.S.C. § 544(b) is the relevant provision.

**3.** 11 U.S.C. § 544(b), states in pertinent part:
The Trustee may avoid any transfer of an interest of the debtor in property ... that is voida-

ble under applicable law by a creditor holding an unsecured claim allowable under section 502 of this title....

**4.** Section 273 reads as follows:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.
*N.Y.Debt. & Cred.Law* § 273 (McKinney 1990).

because they are subject to avoidance irrespective of the transferor's intent. *See HBE Leasing Corp. v. Frank,* 48 F.3d 623, 633 (2d Cir.1995). We will now describe in detail each adversary proceeding and the suspect conveyances upon which they are based.

### A. *Adversary Proceeding No. 191–1495–353*

The Trustee commenced this adversary proceeding by complaint, dated September 17, 1991, seeking to avoid as fraudulent certain transfers made by Harvard to Bali. It is undisputed that between November 2, 1988 and April 14, 1989, Harvard conveyed to Bali $645,000.00 by way of sixteen (16) checks drawn on Harvard's account at Chemical Bank.[5] The complaint alleges that the Trustee, his accountants and lawyers were unable to locate in Harvard's books and records any documentation supporting or otherwise justifying the transfers, and that Harvard was insolvent at the time of the transfers and received less than equivalent value therefore. (Compl. ¶¶ 10, 11, 12).

### B. *Adversary Proceeding No. 192–1054–353*

The Trustee commenced this adversary proceeding by complaint, dated February 12, 1992, seeking to avoid as fraudulent certain transfers made by Stephen Douglas to Bali. It is undisputed that between November 16, 1988 and February 17, 1989, Stephen Douglas conveyed to Bali $340,000.00 by way of 7 checks drawn on Stephen Douglas' account at Chemical Bank.[6] The complaint alleges that the Trustee, his accountants and lawyers were unable to locate in Stephen Douglas' books and records any documentation supporting or otherwise justifying the transfers, and that Stephen Douglas was insolvent at the time of the transfers and received less than equivalent value therefore. (Compl. ¶¶ 11, 12, 13).

### C. *Adversary Proceeding No. 192–1084–353*

The Trustee commenced this adversary proceeding by complaint, dated February 20, 1992, seeking to avoid as fraudulent certain transfers made by Harvard to Private Brands. It is undisputed that between June 24, 1988 and February 15, 1989, Harvard transferred to Private Brands $187,564.10 by way of four checks drawn on Harvard's account at Chemical Bank.[7] The complaint alleges that the Trustee, his accountants and

---

5. The checks, all payable to Bali or Bali Mfg., are as follows: check number 5654, dated November 2, 1988, in the amount of $40,000.00; check number 5659, dated November 3, 1988, in the amount of $50,000.00; check number 5681, dated November 22, 1988, in the amount of $50,000.00; check number 5696, dated December 7, 1988, in the amount of $50,000.00; check number 5703, dated December 13, 1988, in the amount of $50,000.00; check number 6916, dated January 20, 1989, in the amount of $20,000.00; check number 6918, dated January 20, 1989, in the amount of $10,000.00; check number 6934, dated January 26, 1989, in the amount of $10,000.00; check number 7015, dated February 15, 1989, in the amount of $50,000.00; check number 7074, dated February 21, 1989, in the amount of $50,000.00; check number 7202, dated March 27, 1989, in the amount of $40,000.00; check number 7229, dated March 29, 1989, in the amount of $40,000.00, check number 7239, dated March 30, 1989, in the amount of $10,000.00; check number 7251, dated March 31, 1989, in the amount of $50,000.00; check number 7252, dated March 30, 1989, in the amount of $75,000.00; check number 7359, dated April 14, 1989, in the amount of $50,000.00.

6. The checks, each payable to Bali or Bali Mfg., are as follows: check number 1336, dated November 16, 1988, in the amount of $50,000.00; check number 1337, dated November 18, 1988, in the amount of $60,000.00; check number 1592, dated December 16, 1988, in the amount of $30,000.00; check number 1906, dated January 25, 1989, in the amount of $50,000.00; check number 1907, dated January 25, 1989, in the amount of $50,000.00; check number 1920, dated January 30, 1989, in the amount of $50,000.00; and check number 2088, dated February 17, 1989, in the amount of $50,000.00.

7. Three checks were payable to Private Brands. They are as follows: check number 5516, dated June 24, 1988, in the amount of $9,328.93; check number 5529, dated June 24, 1988, in the amount of $98,235.17; and check number 7014, dated February 15, 1989, in the amount of $50,000.00. The fourth check, number 5664 and dated November 8, 1988, was payable to an entity known as Pous Apparel in the amount of $30,000.00. The check was subsequently endorsed by Private Brands without the prior endorsement of Pous Apparel and was deposited into the Private Brands account at National Westminster Bank.

lawyers were unable to locate in Harvard's books and records any documentation supporting or otherwise justifying the transfers and that Harvard was insolvent at the time of the transfers and received less than equivalent value therefore. (Compl. ¶¶ 11, 12, 13).

### D. Adversary Proceeding No. 192-1053-353

The Trustee commenced this adversary proceeding by complaint, dated February 12, 1992, seeking to avoid as fraudulent certain transfers made by Stephen Douglas to Private Brands. It is undisputed that Stephen Douglas conveyed to Private Brands $100,-000.00, by way of two checks drawn on Stephen Douglas' account at Chemical Bank.[8] The complaint alleges that the Trustee, his accountants and lawyers were unable to locate in Stephen Douglas' books and records any documentation supporting or otherwise justifying the transfers, and that Stephen Douglas was insolvent at the time of the transfers and received less than equivalent value therefore. (Compl. ¶¶ 11, 12, 13).

### III.

During the discovery phase of these adversary proceedings, Defendants were again given the opportunity to come forward with any evidence which would support the transfers. In response to the Trustee's requests for such documentation, Defendants produced two different series of memoranda.[9] The first consisted of sales invoices which appear to reflect Private Brands' sale of yarn to Harvard, all of which were dated more than nine months after the last of the checks which are the subject of these adversary proceedings.[10] The second consisted of a series of memoranda which appear to reflect Bali's sale of gold chains to a Mr. Rochman ("Rochman Memoranda"), and which contain handwritten notations corresponding to many of these checks by check number and amount.[11] While the purported relevance of these documents will be discussed more fully below, none was readily apparent at the time of their production to the Trustee, who requested further clarification.[12] Concluding that none was forthcoming, the Trustee then moved in each adversary proceeding for summary judgment (collectively, the "Motions").

The basis of the Motions is quite simple. First, it is undisputed that the transfer of the checks at issue occurred while the Debtors were insolvent.[13] Second, nothing gleaned from the Debtors' books and records or Defendants' discovery responses evidences that the Debtors received any consideration for these conveyances.[14]

Initially, Defendants' opposition to the Motions is based on the ground that the Trustee, who bears the burden of proving the nonexistence of fair consideration, relies solely on the Debtors' books and records which are inadmissible at trial when offered for that purpose. See Fed.R.Evid. 803(7). Therefore, the Motions are not properly supported and may be dismissed out of hand. See Moskowitz Aff. ¶¶ 4, 5, 12; Defendants' Memorandum at 10, 14-18; Reply Brief at

---

8. Both checks were payable to Private Brands in the amount of $50,000.00. The first, number 2045, was dated February 14, 1989. The second, number 2122, was dated February 22, 1989.

9. In each adversary proceeding, the Trustee's First Request for the Production of Documents is annexed as Exhibit E to the related Motion for Summary Judgment.

10. These invoices are annexed as Exhibit F to the Trustee's Motions for Summary Judgment relating to Adversary Proceeding Numbers 92-1084 and 92-1053. Their obvious irrelevance to these adversary proceedings has apparently been conceded.

11. The Rochman Memoranda are annexed as Exhibit F to the Trustee's Motions for Summary Judgment relating to Adversary Proceeding Numbers 91-1495 and 92-1054.

12. In each adversary proceeding, the Trustee's First Set of Interrogatories is annexed as Exhibit G to the related Motion for Summary Judgment.

13. Hereinafter, "Checks" refers to all of the checks that are the subject of these adversary proceedings. Any relevant distinctions will be identified.

14. See Affidavit of Kelley Deere, Esq., attorney for the Trustee, submitted in support of the Trustees' Motions. While separate affidavits were offered in support of each motion, they are all virtually identical. The only difference is the particular Checks at issue in each.

4.[15] Accordingly, Defendants have cross-moved for summary judgment in each adversary proceeding, arguing that the Trustee has offered no cognizable basis for rationally inferring the nonexistence of fair consideration and therefore, cannot possibly demonstrate a claim of constructive fraud. *See Defendants' Memorandum* at 18.

Alternatively, Defendants oppose the Motions on the basis that there exists sufficient evidence from which a rational trier of fact may infer the Debtors received consideration for the Checks, not from the Defendants, but from third parties for whose benefit the checks were issued. This consideration is alleged to be reflected in the Debtors' books and records as credits to what Defendants describe as Michael Binet, Schlomo Berger and Stephen Douglas loan and exchange accounts ("L & E Accounts" or "Accounts"). *See Moskowitz Aff.* ¶¶ 6–11; *Defendants' Memorandum* at 3–4, 6–7, 13; *Reply Brief* at 4.[16]

We find the Trustee has properly supported his Motions and consequently, deny Defendants' cross-motions. In addition, as Defendants have failed to set forth specific evidence demonstrating a genuine issue of material fact, the Trustee's Motions are granted.

## A. *Summary Judgment Standards*

Summary judgment is not viewed as a disfavored procedural shortcut but rather as an integral part of the Federal Rules of Civil Procedure, which are designed to secure the "just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Fed.R.Civ.P. 56(c), made applicable to these adversary proceedings by Fed.

R.Bankr.P. 7056, sets forth the general standards for summary judgment and states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). In passing on a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there are issues of fact to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of demonstrating the non-existence of any genuine issue of material fact, which burden may be discharged by pointing out the absence of evidence supporting the non-moving party's case. *Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2553; *Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991). Once faced with a properly supported motion, the non-movant must then set forth specific evidence demonstrating the existence of a factual issue which is both material and genuine. Fed.R.Civ.P. 56(e); *see Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510; *Citizens Bank of Clearwater,* 927 F.2d at 710; *Delaware & Hudson Ry. v. Consol. Rail Corp.,* 902 F.2d 174, 177–78 (2d Cir. 1990), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). While all reasonable inferences are drawn in favor of the non-moving party, *Katz v. Goodyear Tire & Rubber Co.,* 737 F.2d 238, 244 (2d Cir.1984), summary judgment may be granted where the record taken as a whole could not lead a rational trier of fact to find for the non-

---

**15.** "Moskowitz Aff." refers to the Affirmation of Avraham Moskowitz, Esq., in Opposition to Trustee's Motions and in Support of Defendants' Cross–Motions. "Defendants' Memorandum" refers to Defendants' Memorandum of Law in Opposition to the Trustee's Motions and in Support of the Defendants' Cross–Motions. "Reply Brief" refers to Defendants' Reply Brief in Opposition to the Trustee's Motions and in Support of the Defendants' Cross–Motions.

**16.** It should be noted that Messrs Binet and Berger are alleged by the Trustee in a separate lawsuit to have participated in a massive scheme to loot the Debtors' assets and thereby having caused the Debtors' financial collapse. *Pereira v. Binet, et al.,* Adversary Proceeding Number 192–1269; *see Pereira v. Binet (In re Harvard Knitwear, Inc.),* 153 B.R. 617 (Bankr.E.D.N.Y.1993). When questioned about the Checks, Mr. Binet invoked his fifth amendment right not to testify. Mr. Berger has left the country and cannot be questioned.

movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. *Movant's Burden*

■ We begin our examination of the Motions and cross-motions by analyzing the respective evidentiary burdens regarding the absence of fair consideration, the only disputed element of the Trustee's underlying claims.[17] Ordinarily, the party challenging a conveyance as constructively fraudulent, in this case the Trustee, has the burden of proving the absence of fair consideration. *See Petersen v. Vallenzano,* 849 F.Supp. 228, 231 (S.D.N.Y.1994); *ACLI Gov't Sec., Inc. v. Rhoades,* 653 F.Supp. 1388, 1391 (S.D.N.Y. 1987), *aff'd,* 842 F.2d 1287 (2d Cir.1988). However, under some circumstances, the burden of coming forward with evidence sufficient for a rational trier of fact to infer the existence of fair consideration falls on the transferee. These include cases where the party challenging the conveyance demonstrates that evidence of the nature and value of consideration is in the transferee's control. *See Gelbard v. Esses,* 96 A.D.2d 573, 576, 465 N.Y.S.2d 264, 267–68 (2d Dep't 1983); *ACLI,* 653 F.Supp. at 1391; *Gray v. Fill (In re Fill),* 82 B.R. 200, 216–18 (Bankr.S.D.N.Y. 1987). These may also include cases where the party challenging the conveyance adequately demonstrates the complete absence of any record or indication of consideration for the suspect transfers. *See Pereira v. Goldberger (In re Stephen Douglas, Ltd.),* 174 B.R. 16, 20 (Bankr.E.D.N.Y.1994); *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.),* 68 B.R. 530, 533 (Bankr.

S.D.Fla.1986), *aff'd,* 848 F.2d 1196 (11th Cir. 1988).

■ Clearly, the Trustee has demonstrated what can only be described as an inexplicable and obviously frustrating evidentiary vacuum with respect to the existence of fair consideration for approximately $1.2 million, conveyed to the Defendants by way of twenty-nine (29) checks. We are satisfied that the Debtors' books and records contain nothing which on its face indicates consideration was received from the Defendants, the only obvious source. Nor do they contain any basis for inferring the existence of a relationship between the Debtors and the Defendants which would otherwise justify the transfers. In addition, in response to the Trustee's requests for the production of documentation supporting the transfers, Defendants produced documents with no apparent relevance to the requests.

Defendants do not contest these facts and circumstances. Instead, Defendants argue that they provide insufficient basis for a properly supported summary judgment motion. This position seems to be grounded in the proposition that to carry the initial burden in a summary judgment context, the Trustee must set forth sufficient evidence of the non-existence of fair consideration which would entitle him to a directed verdict if uncontroverted at trial. *See generally Celotex,* 477 U.S. at 331, 106 S.Ct. at 2557 (Brennan, J. dissenting) (citation omitted). Defendants contend the Trustee relies to this end solely on the Debtors' books and records which, pursuant to Fed.R.Evid. 803(7), are inadmissible if offered for that purpose.[18]

---

17. Parties moving for summary judgment are required to submit a statement of material facts as to which there is no genuine issue. Local Bankr.R. 22(b) (E.D.N.Y.). Factual assertions in a statement submitted pursuant to this rule are deemed admitted unless directly contradicted by an opposing statement. *Id.; see, e.g., First Fed. Sav. and Loan Assoc'n v. Kelley (In re Kelley),* 163 B.R. 27, 33 (Bankr.E.D.N.Y.1993). The Trustee and the Defendants each submitted Rule 22(b) statements acknowledging or failing to directly dispute the Debtors' insolvency when making the challenged transfers.

18. Fed.R.Evid. 803(7) provides that under certain circumstances, evidence that a matter is not entered into business records may be admissible

to prove the non-existence of that matter. However, it must be shown that it was the regular course of that business to record such matter, if such matter existed or occurred and that the business records were kept in accordance with the requirements of Fed.R.Evid. 803(6), and are otherwise trustworthy. Fed.R.Evid. 803(7); *see* Barry Russell, *Bankruptcy Evidence Manual* § 803.19 at 543–44 (1994).

Defendants, citing to the deposition testimony of Gary Lampert, an employee of the Trustee's Accountant (relevant portions of which are annexed as Exhibit A to the Moskowitz Affirmation), contend the books and records are incomplete and unreliable and are therefore inadmissible to prove the absence of fair consideration.

Further, as no other evidence to this end has been proffered, Defendants argue that the Trustee's case is not worthy of submission to a trier of fact and that Defendants' cross-motions for summary judgment should be granted. We disagree.

The Trustee is not stitching his summary judgment net solely with the thread of the Debtors' books and records which, in any event, are not offered to affirmatively prove the absence of fair consideration. Instead, the Debtors' books and records are merely one element of a cumulative and multi-faceted showing of the absence of evidence of consideration. This showing is the very basis of a properly supported summary judgment motion, as its effect is to shift to the Defendants the burden of producing evidence demonstrating the need for trial. In this case, the only way Defendants may demonstrate the need for a trial is by coming forward with specific evidence from which a rational trier of fact could infer the existence of fair consideration for the checks which, as will be discussed below, they have failed to do. This dereliction mandates judgment in favor of the Trustee on his claims as a matter of law. *See Vezzetti v. Pellegrini*, 22 F.3d 483, 485 (2d Cir.1994) ("A dispute is genuine [only] 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.' (citation omitted)"); *Coan v. Andersen (In re Andersen)*, 166 B.R. 516, 523 (Bankr.D.Conn.1994). Accordingly, we deny Defendants' cross-motions as the Trustee has demonstrated sufficient basis for prevailing on his claims.

■ In so ruling, we recognize the unique difficulties with which a bankruptcy trustee is often faced in efforts to vindicate fraudulent conveyance statutes. On one hand, a debtor's books and records are often in tatters or non-existent and its principals unhelpful. On the other hand are suspect transferees with little incentive to provide any enlightenment. To require a trustee to produce affirmative evidence that fair consideration was not received would be unfairly burdensome and indeed unrealistic. Instead, by adequately demonstrating an absence of evidence of consideration, a trustee may shift to the transferee the burden of coming forward with evidence upon which a trier of fact might rationally infer the existence of fair consideration. This is clearly the most equitable allocation of the burden of production under these circumstances. Who bears the burden of persuasion at trial is an issue we need not address in the summary judgment context.

## C. *Non–Movant's Burden*

Thwarted in their attempts to unravel the Trustee's summary judgment net, Defendants may yet escape its grasp by setting forth specific facts sufficient for a rational trier of fact to infer that fair consideration exists for the suspect transfers. Fed. R.Civ.P. 56(e); *see generally Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356; *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Defendants have set forth a complex scenario of much speculation and selected dribbles of fact purported to demonstrate the Debtors received full consideration for the Checks, albeit from unidentified third parties. Upon closer examination, this exhibition fails to pass inspection.

Defendants' scenario revolves around the Debtors' books and records which, as mentioned earlier, contain certain L & E Accounts. Defendants postulate that these Accounts were debited the full amount of the Checks when the Checks were initially issued and that, as reflected by the Accounts, all sums were subsequently replaced. An analysis of these Accounts, performed and memorialized by the accounting firm of BDO Seidman, appears to reflect debits which correspond to many of the Checks by check number and amount.[19] It also reflects cred-

---

19. The BDO Seidman analysis is annexed as Exhibit B to the Moscowitz Affirmation. BDO Seidman was retained pre-petition by Forstmann & Company, Inc. ("Forstmann") to perform an analysis of the L & E Accounts. Relying upon this analysis, Forstmann, a creditor of the Debtors, filed a complaint in the Supreme Court of the State of New York against, *inter alia*, Michael Binet, Schlomo Berger, Private Brands, Bali and Nat Schlesinger, the principal of Defendants. According to Forstmann's complaint, the transactions and transfers reflected in the L & E Accounts had no legitimate business purpose and had no connection with the manufacture and

its in various dollar amounts which, in total, exceed the debits. However, unlike the debits, the analysis is silent as to the origin of the credits and there is nothing indicating from where the money came, in what manner or for what purpose.

Defendants would seem to hypothesize that the Checks were initially issued for the benefit of Michael Binet, Schlomo Berger and Stephen Douglas at the behest of nameless third parties with whom Michael Binet, Schlomo Berger and Stephen Douglas transacted unspecified business. The credits are proposed to represent repayment of these sums, although Defendants candidly acknowledge they have no evidence to support this notion. *See Reply Brief* at 8. Instead, Defendants .attempt to slough their evidentiary obligations by stating the Checks were received not from Michael Binet, Schlomo Berger, Stephen Douglas or the nameless third parties, but from various other unidentified individuals pursuant to Defendants' general policy of accepting third party checks as payment for sold merchandise. *See Reply Brief* at 8; *Defendants' Memorandum* at 12–13.[20] Offered as a concrete example of this policy are the Rochman Memoranda, which are purported to demonstrate Defendants received many of the Checks from Mr. Rochman as payment for the sale of gold chains. *See Transcript of Oral Argument,* dated September 9, 1994, at 28–31.

■ Of course "[D]efendants [have] presented no evidence to support [their] implausible claim[s], however, and in order to avoid summary judgment, a party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.

1991) (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356). In fact, Defendants have offered nothing which could rationally be interpreted as demonstrating the Debtors received fair consideration for the Checks. If these adversary proceedings were to proceed to trial based upon Defendants' intimations, completely unsupported by evidence, that the Debtors received fair consideration, it is clear that a directed verdict in favor of the Trustee would be appropriate. If on the other hand, evidence was available to underpin Defendants' asserted notions of fair consideration received by the Debtors for the Checks, Fed.R.Civ.P. 56(e) required Defendants to come forward with it. As Judge Kaufman cautioned:

> A party opposing a motion for summary judgment simply cannot make a secret of his evidence until trial, for in doing so he risks the possibility that there will be no trial.

*Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir.1972).

■ The L & E Accounts, as represented by the BDO Seidman analysis, contain nothing indicating the extent to which credits represent monies actually received, let alone specific repayment for the Checks. The Rochman Memoranda do not relieve the Defendants of this burden and instead raise more questions than they answer. While Defendants may very well have had a general policy of accepting third party checks as payment for sold merchandise, these memoranda alone provide no basis for inferring the Defendants received the Checks pursuant to this arrangement.[21] Moreover, even if Defendants did receive the Checks as payment for sold merchandise, they would not be relieved of the burden of coming forward with

---

sale of apparel or the regular business operations of the Debtors. It is ironic that the Defendants bring this BDO Seidman analysis to the court's attention.

**20.** According to their principal, Nat Schlesinger, Defendants routinely accepted "third party checks" as payment for sold merchandise. *See* deposition transcript of Mr. Schlesinger, which is annexed as Exhibit "C" to the Moskowitz Affirmation. We note that Mr. Schlesinger was charged by the Trustee with participation in the same fraudulent scheme as Messrs Binet and Berger. *See supra* note 16.

**21.** Mr. Schlesinger made no representations with respect to Mr. Rochman paying for gold chains with the Debtors' checks, nor could he. According to his own testimony, Mr. Schlesinger did not know Mr. Rochman personally and had no dealings with him respecting the transactions which are the subject of the Rochman Memoranda, or any other transactions. *See Schlesinger Deposition Transcript* at 56, 58, 59. Mr. Rochman's testimony might be helpful, but is unavailable. He is deceased. *Id.* at 59.

evidence that the Debtors received fair consideration for the transfers. At most, it could possibly demonstrate rational basis for inferring that Defendants gave value for the checks, one element of a possible affirmative defense which Defendants have failed to even plead. *See* 4 *Collier on Bankruptcy* ¶ 548.10 at 129 (Lawrence P. King ed., 15th ed. 1995).[22]

■■■ "The [D]efendants' bald assertion[s], completely unsupported by evidence, [do] not satisfy their burden; [and] certainly [do] not 'present[ ] a sufficient disagreement to require submission to a jury' as required by Fed.R.Civ.P. 56(c)." *Carey,* 923 F.2d at 21 (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12). Therefore, summary judgment in favor of the Trustee is granted.

### IV.

The Trustee in each of his complaints requests judgments against each of the Defendants for the challenged transfers "plus interest thereon since the date of [each] complaint together with the costs and disbursements of [each action] including the Trustee's reasonable attorney's fees."

■■■ The Trustee need not specifically request post-judgment interest as it is mandated by federal law. Federal law governs whether post-judgment interest is awarded on a federal court judgment in an action otherwise governed by state law. *Pester Ref. Co. v. Ethyl Corp. (In re Pester Ref. Co.),* 964 F.2d 842, 849 (8th Cir.1992). The operative statute is 28 U.S.C. § 1961(a), which reads in pertinent part: "[i]nterest shall be allowed on any money judgement in a civil case recovered in a district court." Because a bankruptcy court is a "unit" of the district court (28 U.S.C. § 151), 28 U.S.C. § 1961 applies to bankruptcy court judgments. *See Firestone Tire & Rubber Co. v. Goldblatt Bros., Inc. (In re Goldblatt Bros., Inc.),* 61 B.R. 459, 466 n. 4 (Bankr.N.D.Ill.1986); *DuVoisin v. Anderson (In re Southern Indus. Banking Corp.),* 87 B.R. 518, 520 (Bankr.E.D.Tenn. 1988).

■■■ Pre-judgment interest in trustee avoidance actions, though not mandated by statute, may be awarded at the discretion of the court. *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.),* 850 F.2d 1275, 1281 (8th Cir.1988). On the record of these cases, we believe the Trustee is deserving of redress for the wrongful retention of the subject funds during the pendency of the lawsuits and that pre-judgment interest is an appropriate vehicle to accomplish this equitable objective. *See Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.),* 4 F.3d 1556, 1566 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1061, 127 L.Ed.2d 381 (1994); *Bucki v. Singleton (In re Cardon Realty Corp.),* 146 B.R. 72, 81 (Bankr. W.D.N.Y.1992); *Yoder v. T.E.L. Leasing, Inc. (In re Suburban Motor Freight, Inc.),* 124 B.R. 984, 1005–06 (Bankr.S.D.Ohio 1990). Accordingly, pre-judgment interest will be allowed from the date of the filing of the complaints and, because the judgments are predicated on New York substantive law, at the New York rate. *N.Y. Civ. Prac.L & R.* 5004 (McKinney 1992) ("Interest shall be at the rate of nine per centum. . . .").

■■■ The Trustee also seeks reasonable attorneys' fees and reimbursement of related disbursements. Under New York law, an award of attorneys' fees in a fraudulent conveyance action is not appropriate in the absence of a showing of actual fraudulent intent on the part of a defendant. *See Orbach v. Pappa,* 482 F.Supp. 117, 121 (S.D.N.Y.1979); *In re Cardon Realty Corp.,* 146 B.R. at 81. Under the traditional American rule, attorneys' fees are not ordinarily recoverable by a prevailing party in federal litigation in the absence of statutory authorization. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The Supreme Court first recognized this principle almost two centuries ago in *Arcambel v. Wiseman,* 3 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796), where it ruled

---

**22.** It should be noted that the total amount sought to be recovered from Bali is $985,000.00. Assuming the Rochman Memoranda do demonstrate value given for the Checks, they would do so only with respect to about two-thirds (⅔) of the amount of the suspect transfers to Bali (about $600,000) and not at all with respect to the transfers to Private Brands.

that the courts must respect this "general practice" except where "it is changed, or modified, by statute."

■ New York law provides for the recovery of attorneys' fees only in an action to set aside a conveyance made with intent to defraud. *N.Y. Debt. & Cred. Law* §§ 276, 276–a (McKinney 1990). There is no provision for the recovery of attorneys' fees in actions, like these adversary proceedings, based on Debtor and Creditor Law § 273, New York's constructive fraudulent conveyance statute. Nor has the Trustee shown any other basis for departing from the general American rule governing allocation of the costs of litigation, i.e., that each litigant must bear its own cost for legal fees. Accordingly, the Trustee's requests for attorneys' fees and reimbursement of related disbursements are denied.

### V.

Based on all of the foregoing, the Trustee's motions for summary judgment are granted and he is entitled to separate judgments in Adversary Proceeding numbers 192–1053–353, 192–1054–353, 192–1084–353 and 191–1495–353, setting aside the conveyances to each of the Defendants pursuant to 11 U.S.C. § 544(b) and authorizing recovery of the monies fraudulently conveyed pursuant to 11 U.S.C. § 550(a), with pre-judgment interest computed at the New York rate from the commencement of the various lawsuits. Defendants' cross-motions for summary judgment are denied.

**SETTLE SEPARATE JUDGMENTS IN EACH OF THE ABOVE–CAPTIONED ADVERSARY PROCEEDINGS ON NOTICE TO THE DEFENDANTS.**